Byron Eidson appeals from a summary judgment in favor of Olin Corporation on Eidson's counterclaim for abuse of process and malicious prosecution. We affirm.
Olin filed suit against Eidson and other defendants, alleging that they had conspired to defraud Olin of approximately $150,000 "by and through a scheme and pattern of fraudulently inflated contracts." G.M. Mosley, one of the defendants, was criminally convicted of wire fraud as a result of his involvement in the inflated contract scheme, which was also the basis of Olin's civil action against Eidson and the other defendants. Part of Mosley's sentence required him to pay restitution to Olin. After Mosley completed his cash payments of restitution and executed a promissory note to Olin for the balance, Olin voluntarily dismissed its complaint and all pending claims against all remaining defendants, including Eidson. At that time, Eidson had pending a counterclaim against Olin for abuse of process for filing this civil suit "willfully, maliciously and without probable cause." After Olin dismissed its complaint against Eidson, Eidson amended his counterclaim by adding a count for malicious prosecution.
 I. MALICIOUS PROSECUTION
"Malicious prosecution is an action disfavored in the law."Cutts v. American United Life Insurance Co., 505 So.2d 1211,1212 (Ala. 1987). The reason for such disfavor is clear: "[P]ublic policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge." Boothby Realty Co. v. Haygood, 269 Ala. 549, 554,114 So.2d 555, 559, (1959).
For the trial court to have erred in granting summary judgment for Olin on the malicious prosecution count, there must have been some direct or circumstantial evidence from which the trier of fact could reasonably infer each of the following elements, which comprise a cause of action for malicious prosecution: (1) that a judicial proceeding was initiated by Olin against Eidson, (2) that the judicial proceeding was instituted without probable cause, (3) that the proceedings were instituted by Olin maliciously, (4) that the judicial proceeding had been terminated in favor of Eidson, and (5) that Eidson suffered damage as a proximate cause of the judicial proceeding. Smith v. Wendy's of the South, Inc.,503 So.2d 843, 844 (Ala. 1987). *Page 1285 
Clearly, there was a judicial proceeding initiated by Olin against Eidson. To determine if there was any evidence of lack of probable cause to file this judicial proceeding, we must first determine the nature of the judicial proceeding — a civil action for conspiracy.
Civil conspiracy is a combination of two or more persons to accomplish an unlawful end (by civil law standards) or to accomplish a lawful end by unlawful means. Barber v.Stephenson, 260 Ala. 151, 69 So.2d 251 (1953). By its very nature, the existence of a conspiracy must often be inferred from circumstantial evidence and the relationship of the parties, as opposed to direct evidence. In O'Dell v. State exrel. Patterson, 270 Ala. 236, 117 So.2d 164 (1959), the Court held:
 "A great quantum of detail need not be required to be alleged as to the formation of the conspiracy because of the clandestine nature of the scheme or undertaking engaged in. The existence of the conspiracy must often be inferentially and circumstantially derived from the character of the acts done, the relation of the parties, and other facts and circumstances suggestive of concerted action."
270 Ala. at 240, 117 So.2d at 168. See Turner v. Peoples Bankof Pell City, 378 So.2d 706 (Ala. 1979).
It is well settled, therefore, that conspiracy may be established by circumstantial evidence and inferences drawn from the relationship of the alleged conspirators. NationalDistillers Chemical Corp. v. American Laubscher Corp.,338 So.2d 1269 (Ala. 1976).
Probable cause is defined as " '[a] reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged.' "Parisian Co. v. Williams, 203 Ala. 378, 383, 83 So. 122, 127
(1919). "The question is not whether the [malicious prosecution] plaintiff was guilty of the thing charged, but whether the [malicious prosecution] defendant acted in goodfaith on the appearance of things." (Emphasis supplied.)Birwood Paper Co. v. Damsky, 285 Ala. 127, 134-135,229 So.2d 514, 521 (1969).
In determining whether probable cause existed, the court must weigh Olin's actions in light of the facts as they appeared at the time the civil conspiracy action was filed. Hanson v.Couch, 360 So.2d 942 (Ala. 1978); Dodson v. Ford Motor CreditCo., 46 Ala. App. 387, 243 So.2d 43 (1971).
Because malicious prosecution actions are not favored in the law (Cutts v. American National Life Insurance Co., supra), at the trial of the malicious prosecution action Eidson would have a strict burden of proving a negative — i.e., the complete absence of a scintilla of probable cause for Olin to bring the civil conspiracy action. Alabama Power Co. v. Neighbors,402 So.2d 958 (Ala. 1981). Eidson's failure to prove the absence of probable cause would result in a judgment in favor of Olin as a matter of law. For purposes of summary judgment, the converse of Eidson's burden of proof may be stated as follows: If there are any undisputed facts of record establishing that Olin had probable cause to bring the former action (civil conspiracy) against Eidson, then Eidson cannot recover for malicious prosecution and summary judgment is appropriate.
"If the facts on the issue of probable cause are not in dispute, whether such facts amount to probable cause is a question of law for the courts." Hanson v. Couch, supra, at 945; Gulf States Paper Corp. v. Hawkins, 444 So.2d 381 (Ala. 1983).
The test that this Court must apply when reviewing the lack-of-probable-cause element in a malicious prosecution case in which summary judgment has been granted to a defendant is as follows: Can one or more undisputed facts be found in the record below establishing that the defendant acted in good faith on the appearance of things as they existed when suit was filed, based upon direct evidence, or upon circumstantial evidence and inferences that can reasonably be drawn therefrom? If so, *Page 1286 
then summary judgment in favor of the defendant on plaintiff's malicious prosecution count would be appropriate.
An examination of the record reveals the following: Eidson conceded that his own statements made to an investigator prior to Olin's filing the action for civil conspiracy would probably constitute a foundation for Olin's filing such an action against Eidson. The information and documentation Olin had at the time it filed the civil conspiracy suit that implicated Eidson, other than the statements made by Eidson, are equally compelling. These facts appear to be undisputed. During an audit performed in the later part of 1982, Olin discovered that it had been the victim of a fraudulent scheme that had resulted in overpayment by Olin to G.M. Mosley, General Contractors, Inc. (the contractor), in excess of $120,000 above the fair and reasonable value of the work performed on five construction projects at Olin's plant in McIntosh, Alabama. Olin's employee, Eidson, was responsible for preparing Olin's internal cost estimates on each of these projects. Under Olin's procedures, these cost estimates were used by Olin to determine what amount of its capital budget would be appropriated to fund the particular projects covered by the estimates. The cost estimates, over which Eidson had responsibility and control, were key documents for controlling the flow of money from Olin to its outside contractors. Prior to filing suit, Olin obtained an experienced independent estimator to review the cost estimates. He estimated that Eidson's estimate of one project was almost 350% higher than it should have been. Eidson prepared and signed two additional estimates, which were duplications of the same work. Pursuant to these estimates Olin awarded the contractor two separate contracts — one for $18,300 and the other for $18,500 — for construction of the same concrete pad. The independent estimator advised Olin, prior to its filing suit, that $25,000 of the $36,000 paid to Mosley under the two contracts was excessive. The three estimates, each of which was signed by Eidson and prepared under his supervision, accounted for approximately $83,000 of the excess contract proceeds paid to Mosley by Olin. Eidson admitted that the estimates were grossly inflated. Other estimates for which Eidson had responsibility were signed by another employee of Olin and accounted for the balance of the excess contract proceeds paid to the contractor by Olin. Eidson had refused to sign these estimates, but there is no evidence that he alerted anyone at Olin of their excessiveness. Therefore, when Olin filed suit there was evidence of the existence of grossly inflated estimates, and Eidson's responsibility therefor. The following facts are undisputed and tend to link Eidson with the central characters — the contractor and Ed Nemeth, who was an employee of Gulf States Engineering, which was the project engineer at Olin on the jobs performed by the contractor. Mosley gave Olin a sworn written statement prior to the civil conspiracy suit admitting that he or his company had defrauded Olin of $150,000 to $200,000 on the five projects and had paid kickbacks to Nemeth. Mosley further stated that Eidson was involved, and that he was being paid by Gulf States Engineering, Nemeth's employer. Nemeth advised Olin in a written statement and in two telephone conversations, prior to Olin's filing of the civil conspiracy suit, that Eidson was involved in the scheme to defraud Olin. Prior to the filing, Olin had obtained sworn written statements from two of Eidson's co-employees regarding Eidson's potential involvement. One stated that he suspected that Eidson was receiving kickbacks from contractors such as Mosley and Gulf States Engineering. The other confirmed that Eidson had inflated estimates and was dishonest. Olin also had a memorandum from two of its investigators outlining a conversation with Roy Peavy, the owner of Gulf States Engineering. According to the memorandum, Peavy had conferred special gifts upon Eidson, including allowing Eidson to use Gulf States' credit card on weekends. Eidson introduced an affidavit from Peavy stating that he had not stated this to Olin's investigators and that Eidson had received no such remunerations from Peavy. *Page 1287 
Civil conspiracies are usually proved through circumstantial evidence and inferences that can be reasonably drawn therefrom. Olin had direct evidence as well as circumstantial evidence from which one could reasonably draw inferences of Eidson's involvement in a conspiracy to defraud Olin by and through a scheme and pattern of fraudulently inflated contracts.
With Olin having established probable cause for filing the civil conspiracy action against Eidson, the burden shifted to Eidson to prove that all of the direct evidence and circumstantial evidence from which inferences of probable cause could reasonably be drawn was disputed at the time the suit for civil conspiracy was filed. By reviewing the excellent briefs and by reading all, and re-reading some, of the 405-page deposition of Robert K. Gebing, with the 39 exhibits attached thereto; the 50-page deposition of William E. Davis; the 70-page deposition of Gerald P. Mosley, with the 11 exhibits attached thereto; Eidson's answers to interrogatories; all affidavits; and all pleadings, we conclude that Eidson did not carry this difficult burden. Clearly, there are chinks in Olin's battlement of probable cause; however, if those items which may be disputed are removed (e.g., whether Peavy told the investigators that Eidson received gifts or remuneration from him), Olin still had probable cause to believe that a conspiracy existed. The facts that Eidson was permitted to resign; that he was terminated rather than criminally prosecuted; that this notation appeared in Eidson's file: "serious allegations of receipt of kickbacks and excessive favors not proven" (emphasis supplied)[1]; and the besmirched character of the alleged co-conspirators, Mosley and Nemeth, do not dispute the direct and circumstantial evidence of Olin's probable cause to believe that Eidson was involved in this conspiracy so as to make the absence of probable cause a question of fact.
Eidson in his deposition was candid enough to admit that the answers he gave to investigators may have, in themselves, established probable cause:
 "Q. Do you believe that there are some statements that you made to Mr. Jaspin during the interview that would constitute a foundation for Olin filing suit against you?
"[Eidson]: Probably."
Therefore, we pretermit discussion of whether there was a scintilla of proof of malice and whether the voluntary dismissal without prejudice by Olin of the civil conspiracy action was a favorable termination of that action for purposes of a malicious prosecution suit.
There was no error in the trial court's granting summary judgment to Olin on Eidson's malicious prosecution count.
 II. ABUSE OF PROCESS
The trial court also granted summary judgment in favor of Olin on Eidson's abuse of process claim. In Dempsey v. Denman,442 So.2d 63 (Ala. 1983), the Court stated as follows:
 "This tort [abuse of process] is defined as the perversion of a regular and valid process, which has been duly and properly issued, whereby a result not lawfully or properly attainable under it is secured. Duncan v. Kent, 370 So.2d 288 (Ala. 1979); Dickerson v. Schwabacher, 177 Ala. 371, 58 So. 986 (1912). To maintain an action for abuse of process, existence of an ulterior motive must be proved. Clikos v. Long, 231 Ala. 424, 165 So. 394
(1936).
 "72 C.J.S. Process § 120 (1951) states, at 1190-91:
 " '[Generally,] in order that action for abuse of process may lie, there must have been an unlawful interference with plaintiff's person or property under color of process. . . .
 " '[T]he [ulterior motive] must culminate in an actual abuse of the process by perverting it to a use to obtain a result which the process was not intended by law to effect. . . .' *Page 1288 
 "Furthermore, 1 Am.Jur.2d Abuse of Process § 13 (1962) states:
 " 'If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse. . . .'
"See also Duncan v. Kent, supra."
442 So.2d at 65. See, also, Warwick Development Co. v. GVCorp., 469 So.2d 1270 (Ala. 1985) ("abuse of process rests on the wrongful use of the process after it has been issued" and "[a]n abuse of process action 'presupposes an originally valid and regular process, duly and properly issued, and the validity of the process is no defense to an action for its abuse' "). Having reviewed the briefs and the record, we find no evidence tending to show that Olin commenced this lawsuit against Eidson for any reason other than to obtain a judgment against him for the alleged fraud.
Therefore, there was no error in the trial court's grant of summary judgment to Olin on Eidson's abuse of process claim.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.
[1] "This liability of each member of a conspiracy for the damage resulting therefrom exists whether or not the conspirator profited from the result of the conspiracy." 16 Am.Jur.2dConspiracy § 56 (1979).