The defendant, Fina Oil and Chemical Company, appeals from a judgment entered on a jury verdict in favor of the plaintiffs, Doyle and Norma Chism (husband and wife), in their malicious prosecution action.[1] The jury awarded damages totalling $3,500,000. Fina raises several issues on appeal. Because we reverse and render a judgment based on the primary issue raised — whether Fina had probable cause to institute and continue the actions giving rise to the malicious prosecution action — we pretermit discussion of the other issues.
The facts leading up to this dispute are as follows:
The Chism Transportation Company, Inc. ("the Corporation"), was founded by Doyle Chism. Through the Corporation Chism owned and operated the Chism Truckstop in Ozark, Alabama.[2] Before 1981, Chism owned all the stock in the Corporation and controlled its activities. In 1981, Chism transferred the stock in the Corporation to four persons: Steve Czarnecki, Patty Czarnecki, Charles Mitchell, and Betty Mitchell.[3] Chism, however, retained the right to vote the stock and to repurchase the stock on demand.
In January 1982, a Fina representative, Tony Njirich, met with Charles Mitchell and Steve Czarnecki at the truckstop about the possibility of the Corporation's becoming a Fina distributor. At a later meeting, Njirich informed Czarnecki and Mitchell that Fina would need financial statements and personal guaranties from the corporate officers and anyone else who was significantly involved in the Corporation. Czarnecki and Mitchell produced their own financial statements, as well as Doyle Chism's financial statement, from the safe at the truckstop and gave them to Njirich.
On February 9, 1982, Njirich returned to the truckstop with personal guaranties to be signed by Mitchell, Czarnecki, and Doyle Chism. Mitchell and Czarnecki were present at that meeting, and they signed the *Page 255 
guaranties, which were then notarized by Betty Mitchell. Doyle Chism was not present at that time, but Mitchell and Czarnecki offered to take the guaranty to him and obtain his signature on the document. Njirich told Mitchell and Czarnecki that this course of action might not be satisfactory, because Chism's guaranty would have to be notarized in order to be valid. Czarnecki assured Njirich that he was a notary, and that he would notarize the guaranty. It is now undisputed that Czarnecki then left the truckstop, forged Doyle Chism's name on the guaranty, notarized the guaranty, and returned it to Njirich that same day.
Fina presented evidence that, on February 26, 1982, it sent a letter confirming its receipt of Doyle Chism's personal guaranty to his post office box and included a copy of the guaranty. Chism testified at trial that he never received the letter; Fina argues that the reason Chism never received the letter was that it was intercepted by someone at the truckstop. Chism testified that he received his mail at the truckstop's post office box and that some of his mail was intercepted during this period. On August 27, 1982, Fina sent a letter to Doyle Chism notifying him that the Corporation's account was delinquent in the amount of $494,912.21 and reminding him that he was liable for that amount as the personal guarantor of the debt. The receipt for this letter, which was sent to the truckstop's post office box by certified mail, was signed by Louise Chism, Doyle's sister-in-law, who, Doyle testified, worked at the truckstop "to keep an eye out for [Doyle's] interests." Doyle Chism testified that he never received the letter.
There was evidence that, in October 1982, Doyle Chism received a telephone call at his home from a Fina representative concerning the debt and his liability therefor as personal guarantor. During this conversation, Chism said, he denied ever signing a guaranty and declared that he was not liable for any debts owed to Fina by the Corporation.
The Corporation filed a Chapter 11 bankruptcy petition on November 3, 1982. On November 12, 1982, Fina, acting on the advice of counsel, brought an action against Doyle Chism in a federal district court to collect the overdue debt. About the same time, six other oil companies brought similar actions against Chism. The oil companies conducted settlement negotiations with Chism and his wife Norma, during which, according to the testimony of a lawyer who represented one of the other oil company plaintiffs, the Chisms offered to consent to a judgment against them on condition that the plaintiffs would not collect the judgment so long as the Corporation continued to make payments under its reorganization plan. In order to obtain a judgment against Norma Chism under this anticipated settlement, the lawyer testified, Fina amended its complaint on April 22, 1983, to add Norma Chism as a party defendant.[4] The Chisms apparently later withdrew their offer, although the district judge's secretary entered a notation indicating that the case had been settled.[5]
Doyle and Norma Chism filed for bankruptcy relief under Chapter 11 on August 23, 1983. In the bankruptcy petition, they disputed approximately $1,800,000 in unsecured debts to the various oil companies. The collection action in the federal district court was stayed. In the Chisms' bankruptcy proceeding, the oil companies filed proofs of claim in accordance with the Bankruptcy Code, and the Chisms objected to the claims.
At the trial to determine the validity of the claims, the oil company claimants advanced three theories of recovery: 1) that Doyle Chism was liable for the debts of the *Page 256 
Corporation by virtue of the alleged personal guaranties;[6] 2) that he was liable for the Corporation's debts on an alter ego or instrumentality theory; and 3) that the settlement purportedly entered into by the oil companies and Doyle and Norma Chism was binding on the parties.
On July 19, 1985, Judge Rodney Steele of the Bankruptcy Court for the Middle District of Alabama issued an opinion denying recovery to the oil companies. Judge Steele found that the guaranties had been forged by Czarnecki and were therefore not binding on Doyle Chism. Judge Steele also found that no written settlement was introduced into evidence by the parties; he held that Alabama law precluded enforcement of any alleged settlement under these circumstances. Finally, Judge Steele found that there was no "creditable" evidence that Doyle Chism had utilized the corporate structures of the Corporation to evade his personal obligations or to perpetrate a fraud; he then held that Chism was not liable under an alter ego or instrumentality doctrine under Alabama law.
Fina filed a motion for j.n.o.v. or a new trial, again arguing that Chism should be held liable under the alter ego or instrumentality theory because of the control he continued to exercise over the Corporation after he had transferred the stock. Judge Steele denied Fina's motion, holding that although Chism did exercise considerable influence over the Corporation, he did not control the Corporation, and that in any event there was no causal connection between any control exercised by Chism and the injustice claimed by the oil companies. Fina appealed from Judge Steele's decision to the federal district court; the district court affirmed Judge Steele's decision on May 5, 1986. On June 23, 1986, Fina voluntarily dismissed the original debt collection action filed in the federal district court.
The Chisms brought the present malicious prosecution action in the Coffee County Circuit Court on May 22, 1987. Although they initially named several defendants, they dismissed all the defendants except Fina before trial. The jury returned a verdict awarding Doyle Chism $2,500,000 and a verdict awarding Norma Chism $1,000,000. The trial court entered a judgment on the verdicts.
The action of malicious prosecution is not favored in the law. In Eidson v. Olin Corp., 527 So.2d 1283 (Ala. 1988), this Court stated:
 "Malicious prosecution is an action disfavored in the law. Cutts v. American United Life Insurance Co., 505 So.2d 1211, 1212 (Ala. 1987). The reason for such disfavor is clear: '[P]ublic policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge.' Boothby Realty Co. v. Haygood, 269 Ala. 549, 554, 114 So.2d 555, 559 (1959)."
527 So.2d at 1284. See also Lynch v. Greentree Acceptance,Inc., 575 So.2d 1068 (Ala. 1991); Alabama Power Co. v.Neighbors, 402 So.2d 958 (Ala. 1981).
In order to succeed in a malicious prosecution action, a plaintiff must prove that a prior judicial proceeding was instigated by the present defendant without probable cause and with malice; that the prior proceeding ended in favor of the present plaintiff; and that the present plaintiff was damaged thereby. Lumpkin v. Cofield, 536 So.2d 62 (Ala. 1988).
Fina's primary argument is that the Chisms failed to prove that Fina lacked probable cause to bring the actions to collect the debt in the federal district court and the bankruptcy court. It contends that it was fully justified in attempting to collect the debt based on an apparently signed and notarized guaranty that was regular on its face and based on its other theories of recovery presented in the bankruptcy court. *Page 257 
This Court has defined the term "probable cause" on numerous occasions. In Eidson, supra, the Court characterized the term as follows:
 "Probable cause is defined as 'a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged.' Parisian Co. v. Williams, 203 Ala. 378, 383, 83 So. 122, 127
(1919). The question is not whether the [malicious prosecution] plaintiff was guilty of the thing charged, but whether the [malicious prosecution] defendant acted in good faith on the appearance of things. Birwood Paper Co. v. Damsky, 285 Ala. 127, 134-35, 229 So.2d 514, 521 (1969)."
527 So.2d at 1285 (emphasis in Eidson). In Boothby Realty Co.v. Haygood, 269 Ala. 549, 114 So.2d 555 (1959), this Court defined probable cause in a malicious prosecution action where the underlying action was civil in nature:
 "In determining probable cause for the initiation of civil proceedings, all that is necessary is that the claimant reasonably believe that there is a chance that his claim may be held valid upon adjudication."
269 Ala. at 553, 114 So.2d at 558. Furthermore, it is clear from our cases that the existence of probable cause is to be judged in light of the facts as they appeared when the underlying action was filed. Eidson, supra; Hanson v. Couch,360 So.2d 942 (Ala. 1978).
Fina is correct in arguing that the plaintiff in a malicious prosecution action bears the difficult burden of proving that the defendant lacked probable cause for bringing the underlying action. In Eidson, we stated:
 "Because malicious prosecution actions are not favored in the law, at the trial of the malicious prosecution action [the malicious prosecution plaintiff] would have a strict burden of proving a negative — i.e., the complete absence of . . . probable cause for the [malicious prosecution defendant] to bring the . . . action."
527 So.2d at 1285. Therefore, the Chisms had to prove that Fina could not have "reasonably believe[d] that" its attempt to collect the debt either in the federal district court or in the bankruptcy court would be "held valid upon adjudication."Boothby, supra.
If the facts relating to a determination of probable cause are undisputed, the question of probable cause is one of law for the court and is not an issue for the jury to decide.Gulf States Paper Corp. v. Hawkins, 444 So.2d 381 (Ala. 1983).
It is undisputed that Fina received a notarized document that appeared to be signed by Doyle Chism, purporting to guarantee payment of debts incurred by Chism Transportation for Fina products. With the exception of a minor omission,[7] the document was regular on its face. It is also clear from the record that Fina sent two letters, at least one by certified mail, to the truckstop's post office box, notifying Doyle Chism of the guaranty and the debt. Moreover, although it is disputed, we will assume for purposes of this appeal that Doyle Chism told a Fina representative in the October 1982 telephone conversation that he had not signed the guaranty.[8] Even assuming that Fina possessed this information, it had probable cause to bring the action in the federal court some weeks later to collect the debt. To hold that a creditor is foreclosed from instituting an action to collect a debt for which it holds an apparently signed, notarized guaranty, simply because the apparent guarantor denies liability for the debt, is not supported by law or reason. See Liberty Loan Corp. of Gadsden v. Mizell,410 So.2d 45 (Ala. 1982). *Page 258 
Moreover, Fina had the legal right to litigate its claim in the bankruptcy court, and we reject the argument that Fina should have abandoned its claim once Czarnecki testified in the bankruptcy proceedings that he had forged the guaranty. At that stage in the proceedings, Fina had the right to have a court of law determine whether Czarnecki was telling the truth; Fina also had the right to have the court rule on its other theories of recovery. Judge Steele found that Czarnecki had forged the guaranty, and he denied relief to Fina on the other theories of recovery. Fina then unsuccessfully appealed to the federal district court, and upon receiving an unfavorable ruling in that court it dismissed the underlying collection action. The fact that Fina was ultimately unsuccessful on its claims does not mean that it lacked probable cause to bring them in the first place. Cf. Empiregas Inc. of Elberta v. Feely,524 So.2d 626 (Ala. 1988) (lack of probable cause shown where the malicious prosecution defendant brought the collection action after learning that the statutory period of limitations had run and knowing that its claim was meritless); First Shelby Nat'lBank v. Mitchell, 406 So.2d 959 (Ala.Civ.App. 1981) (lack of probable cause shown where the defendant bank attempted to seize property in which it held a security interest even though it knew or should have known that its rights in the property were by law inferior to the plaintiff's). To hold otherwise would be to undermine the well-established policy of disfavoring actions for malicious prosecution.
Although she did not address this issue in her brief, the Chisms' executrix (see note 1) urged in oral argument that Fina should have engaged in a "reasonable inquiry" into the circumstances surrounding the procurement of the guaranty. She cites no authority for this supposed requirement, and the evidence in this case does not support the imposition of such a requirement.
The evidence shows simply that Czarnecki and perhaps others at the truckstop defrauded both Chism and Fina. Until the bankruptcy court's determination and the affirmance by the federal district court, it was not known whether Chism had in fact signed the guaranty or whether Fina might recover the debt from the Chisms on its other theories. Six other oil companies took the same position as Fina under similar guaranties and under all the circumstances. As a matter of law, the plaintiffs failed to prove that Fina lacked probable cause to bring the debt collection action or the claims in the bankruptcy action. Therefore, the trial court erred in denying Fina's motion for j.n.o.v. The judgment is accordingly reversed, and a judgment is hereby rendered in favor of Fina.
REVERSED AND JUDGMENT RENDERED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] Norma Chism died before the trial of this action and Doyle Chism died shortly after the trial. Rachel Hood is the executrix of their estates; the trial court substituted her for each of them as plaintiff.
[2] Another corporation, Chism Truck Center, Inc., was also involved in the operation of the truckstop, but we shall omit reference to it because Fina extended credit to Chism Transportation, Inc., and because no issue is presented as to the different functions of the two corporations.
[3] The Czarneckis are the Chisms' daughter and son-in-law, and the Mitchells appear from the record to be long-time employees of the truckstop.
[4] In her deposition, Norma Chism was asked, "You were added to the Fina suit as a defendant only after the settlement attempt in which you were involved with all the oil companies, for lack of a better term, went sour, is that not right?" She answered, "Right." Thus, she admitted her involvement in the negotiations.
[5] The bankruptcy judge's order, infra, includes the following: "[W]e cannot conclude that the notation by a United States District Judge's secretary that a matter is 'settled' is any written proof of the settlement or the terms of the settlement."
[6] Doyle Chism's name had apparently been placed on similar guaranties to the other oil company claimants.
[7] The space is left blank on the notarization of the guaranty where Doyle Chism's name was to be typed. However, this was also true of the guaranties signed by Mitchell and Czarnecki.
[8] This fact is disputed. Chism admitted that he was not sure if it was a Fina representative who had called him in October 1982, or a representative from another oil company. This uncertainty is understandable, for in November 1982 Doyle Chism was sued by six other oil companies on similar guaranties.