Hugh Allen Reynolds sued DAPTS, Inc., doing business as Goodyear Tire and Rental Center, and Frank Pannell and J.T. Yeager, each individually and as agents of DAPTS, alleging breach of contract, fraud, slander, and two separate acts of malicious prosecution; Lisa Reynolds, Hugh Reynolds's wife, also claimed damages for an alleged loss of consortium. Before trial, the Reynoldses dismissed all claims as to Yeager and, as to DAPTS and Pannell, dismissed all claims except the two counts of malicious prosecution and the loss of consortium claim. During trial, the court dismissed one of the malicious prosecution claims as to Pannell. Both Pannell and DAPTS moved for directed verdicts at the close of the Reynoldses' evidence; they renewed the motions at the close of all the evidence, and later, after the jury had returned a verdict for the Reynoldses, they moved for a judgment notwithstanding the verdict. The trial court denied all of those motions.
The jury returned a general verdict for Hugh Reynolds, awarding him $10,000 in damages against DAPTS on one of the malicious prosecution claims (hereinafter called "count one") and $35,000 against Pannell on the second malicious prosecution claim (hereinafter called "count two"). The jury also returned a general verdict against DAPTS on count two, but awarded no separate damages. The trial court entered a judgment pursuant to the verdict; it later amended its order to enter a judgment in favor of DAPTS *Page 937 
and Pannell on the loss of consortium claim.[1] Pannell and DAPTS appeal.
DAPTS, Inc., an Alabama corporation whose sole shareholders were Pannell and Yeager, hired Hugh Reynolds as a mechanic in one of its stores in which it did business under the name Goodyear Tire and Rental Center ("Goodyear"). In June 1988, Reynolds began planning to leave the state and to move his family to Lumberton, Mississippi, where his wife's parents resided. In July 1988, Reynolds obtained a loan from The Citizens Bank, after Pannell had agreed to co-sign the note. As collateral on the note, Reynolds pledged his two automobiles, a tool chest, and tools.
Reynolds testified at trial that he informed Pannell on July 14, 1988, that he was quitting his job and leaving the state for Mississippi; Pannell disputed that testimony. Reynolds moved with his family to Mississippi on July 15, 1988. On that same day, someone from Goodyear notified the Geneva police that there had been a theft on the premises, and Officer Steve Morgan arrived to investigate. There was no sign of forced entry. Yeager told Officer Morgan that some tools and a toolbox were missing and that they belonged to Reynolds, who had not come in to work that day. Yeager implied to Officer Morgan that Reynolds had a key to the premises, and he told Officer Morgan that 93 tires were missing from inventory.
Officer Morgan went to Reynolds's former residence and found it vacant. He then prepared a report and turned the matter over to Assistant Chief of Police Junior Farris, who spoke with Yeager; he then further investigated the premises of Goodyear and searched Reynolds's vacant residence. Based on that investigation, Assistant Chief Farris caused to have issued a warrant for Reynolds's arrest, charging him with theft of the missing tires.
On October 7, 1988, Reynolds was arrested in Mississippi, returned to Alabama, and charged with theft of property. After he learned of Reynolds's arrest, Roy G. Dowdy, Executive Vice President of The Citizens Bank, contacted Pannell to remind him of his obligations as cosigner on Reynolds's loan. Thereafter, Pannell began to make payments on the loan. Pannell then contacted his own attorney and told him that he had co-signed a note with Reynolds, that Reynolds had taken collateral for the loan from the state, and that the bank had been calling on Pannell to make payments on the loan. Pannell's attorney informed him that he had legal justification to obtain an arrest warrant charging Reynolds with defrauding secured creditors. On the same day that Reynolds was arrested for theft of property, Pannell signed a warrant against Reynolds for defrauding a secured creditor.
The theft of property charge was "no billed" by the grand jury on January 6, 1989, and the charge of defrauding secured creditors was dismissed on April 3, 1989. Reynolds's subsequent malicious prosecution count one was based on the theft of property arrest, and count two was based on the fraud arrest.
DAPTS and Pannell argue that the trial court erred in denying their respective motions for directed verdict and their motions for J.N.O.V. on the malicious prosecutions claims.
In reviewing the trial court's denial of these motions, we are bound by the same standard as the trial court. Ogle v.Long, 551 So.2d 914 (Ala. 1989). We must determine whether the party with the burden of proof produced sufficient evidence of a conflict warranting a jury's consideration. Macon CountyComm'n v. Sanders, 555 So.2d 1054 (Ala. 1990); Bussey v. JohnDeere Co., 531 So.2d 860 (Ala. 1988). The evidence must be viewed in a light most favorable to Reynolds, the nonmoving party. Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364
(Ala. 1988).
In order to succeed in a malicious prosecution action, a plaintiff must prove 1) that a prior judicial proceeding was instigated by the present defendant, 2) that it was instigated without probable cause and with *Page 938 
malice, 3) that the prior proceeding ended in favor of the present plaintiff, and 4) that the present plaintiff was damaged thereby. Fina Oil Chemical Co. v. Hood, 621 So.2d 253
(Ala. 1993), citing Lumpkin v. Cofield, 536 So.2d 62 (Ala. 1988).
I. DAPTS's Motions for Directed Verdict and J.N.O.V. on Count One
DAPTS correctly points out that there is no cause of action for malicious prosecution unless a judicial proceeding was instigated by the present defendant. Alabama Power Co. v.Neighbors, 402 So.2d 958 (Ala. 1981). DAPTS argues that its agent, Yeager, did not instigate Reynolds's arrest, but merely provided information that led to Reynolds's arrest. DAPTS points out that Officer Farris, not Yeager, signed the arrest warrant, after he had conducted his investigation.
DAPTS relies on Alabama Power Co. v. Neighbors, a malicious prosecution case wherein this Court held that a defendant who provides information that results in another's arrest is not regarded as having "instigated" the arrest. This Court stated:
 "[If a person] merely gives the district attorney's office information regarding an alleged crime, leaving the decision to prosecute entirely to the uncontrolled discretion of the district attorney, who thereafter makes his own independent investigation and thereupon takes the information before the grand jury [and the grand jury] returns indictments against the suspects, . . . in a malicious prosecution action [that person] is not regarded as having instigated the criminal proceeding."
402 So.2d at 962. The Neighbors rule allows a citizen to fulfill one's civic duty to come forth in good faith with information concerning a suspected crime, without fear of repercussions if the information later leads to a wrongful arrest. The rule, however, presupposes that the citizen has stated all material facts within his or her knowledge regarding the alleged crime and has not brought about the indictment by fraud, by suppressing facts, or by other misconduct. Ritch v.Waldrop 428 So.2d 1 (Ala. 1982).
At trial, Ricky Andrews, who had worked with Hugh Reynolds at Goodyear, testified that Yeager had known weeks before the reported theft that tires were missing from the inventory. Andrews stated that he had informed Yeager of the missing tires and that Yeager had told him not to worry about it. Andrews stated that when the last inventory was taken, two weeks before the reported theft, 40 to 45 tires were missing. Andrews also stated that, on two separate occasions, he had been told to load 20 to 25 tires onto Pannell's truck, supposedly to sell from Pannell's wife's business in DeFuniak Springs, Florida; however, according to Pannell, his wife was not in the business of selling tires. After the reported theft of the tires, Pannell and Yeager filed an insurance claim for the missing tires and later received payment for them.
Pannell denied having ever concealed the missing tires at his wife's business or elsewhere; Yeager, whose whereabouts are unknown, did not testify at trial. Nevertheless, a jury could infer from Andrews's testimony that Yeager may have implicated Reynolds in order to conceal his own possible misconduct in relation to the missing tires. Given that we must review the evidence in the light most favorable to the prevailing party and must indulge all reasonable inferences that the jury was free to draw, Warren v. Ousley, 440 So.2d 1034 (Ala. 1983), we conclude that Reynolds did present sufficient evidence to require a jury determination of whether DAPTS maliciously instigated the criminal proceeding against Reynolds.
DAPTS contends that injecting issues of insurance into a tort action is prejudicial and that the trial court thus erred in admitting evidence concerning the insurance claim for the missing tires. We do not agree that the court erred in admitting that evidence. In a tort action based on negligence or wantonness, evidence of liability insurance is generally inadmissible. Otwell v. Bryant, 497 So.2d 111 (Ala. 1986). In this case, however, the evidence of insurance was part of the case-in-chief, because Reynolds introduced evidence to establish the theory that Yeager and Pannell, as agents of DAPTS, maliciously instigated proceedings against *Page 939 
him as part of a scheme to defraud DAPTS's insurance company. The evidence was necessary to establish the elements of the malicious prosecution claim; accordingly, the trial court did not err in admitting it.
DAPTS next argues that the damages awarded in favor of Reynolds as to count one were not supported by the evidence. We disagree. The jury returned a general verdict in favor of Reynolds for $10,000 on that count. DAPTS contends that the jury verdict was not supported by the evidence. Jury verdicts are presumed to be correct. Eubanks v. Hall, 628 So.2d 773
(Ala.Civ.App. 1993), citing Uphaus v. Charter Hospital ofMobile, 582 So.2d 1140 (Ala.Civ.App. 1991). This presumption is strengthened when the trial court denies a motion for a new trial. First Alabama Bank of South Baldwin v. Prudential LifeIns. Co. of America, 619 So.2d 1313 (Ala. 1993). This presumption of correctness is so strong that this Court will not reverse a judgment based on a jury verdict unless, after allowing all reasonable presumptions of correctness, the preponderance of the evidence is against the verdict and is so decided as to clearly convince this Court that the verdict is wrong. Delchamps, Inc. v. Larry, 613 So.2d 1235 (Ala. 1992).
The record shows that Reynolds incurred expenses for posting bond and incurred other out-of-pocket expenses; this fact supports an award for actual damages. Additionally, the trial court instructed the jury that it could award punitive damages if it found that DAPTS consciously or deliberately instigated the prosecution. The jury found the requisite element of malice and awarded damages accordingly. In light of the strong presumption of correctness that attaches to a jury verdict and the evidence in support of this verdict, we conclude that this verdict is not plainly erroneous or manifestly unjust.
II. Pannell's Motions for Directed Verdict and J.N.O.V. on Count Two
Pannell argues that he acted on the advice of his attorney when he prosecuted Reynolds on the claim for defrauding a secured creditor and that this fact is a complete defense to count two of the malicious prosecution claim. It is well settled in this state that advice of counsel, honestly sought and acted on in good faith, supplies an indispensable element of probable cause for beginning a legal action and is a complete defense to an action for malicious prosecution.Hanson v. Couch, 360 So.2d 942 (Ala. 1978). However, "[t]o prevail on this defense, it must be shown factually that the attorney's advice was given on a full and fair statement of all the facts and circumstances know to the prosecutor. . . ."Hanson, 360 So.2d at 945, citing earlier cases.
"Probable cause" is defined in the criminal context as "a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged." Fina Oil, 621 So.2d at 257, quoting earlier cases. In a civil proceeding, " 'all that is necessary [for probable cause] is that the claimant reasonably believe that there is a chance that [the] claim may be held valid upon adjudication.' "Fina Oil, 621 So.2d at 257, quoting Boothby Realty Co. v.Haygood, 269 Ala. 549, 553, 114 So.2d 555, 558 (1959).
The uncontradicted evidence establishes that Pannell sought the advice of counsel concerning his rights and obligations as co-signer of Reynolds's note. Pannell's attorney, Joseph Hughes, testified that Pannell informed him that he had co-signed a note with Reynolds; that Reynolds had left the state with the collateral pledged as security on the note; and that the bank was calling on him for payment. Further, Hughes testified that he had contacted the bank concerning the note and had been informed by Dowdy that Reynolds was not making payments on the note. Based on all this information, Hughes told Pannell that "he had legal justification for obtaining a warrant under the statute for defrauding secured creditors, and that there was probable cause to obtain a warrant."
This evidence was sufficient to establish a complete defense against count two; accordingly, the trial court should have granted Pannell's motion for a directed verdict, and, having not done so, should have granted *Page 940 
Pannell's later motion for J.N.O.V. as to that count. The judgment as to that count against Pannell is therefore reversed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and INGRAM, JJ., concur.
[1] The loss of consortium claim is not involved in this appeal, and Lisa Reynolds is not a party to this appeal.