DONALDSON, Judge.
A party who has been wrongfully enjoined or restrained by an injunction issued pursuant to Rule 65, Ala. R. Civ. P., may seek recourse to recover costs, damages, and attorney fees that are the actual, natural, and proximate result of the wrongful injunction under Rule 65.1, Ala. R. Civ. P., or through an independent action. Recovery is limited to the amount of the injunction bond approved by the court under Rule 65(c), Ala. R. Civ. P., unless it can be established that the party who obtained the injunction acted in bad faith, in which event the injured party’s damages are not limited by the amount of the injunction bond. In the present case, the Houston Circuit Court (“the trial court”), after dissolving an injunction obtained by Consolidated Electrical Contractors & Engineers, Inc. (“Consolidated Electrical”), against Center Stage/Country Crossing Project, LLC, a/k/a Country Crossing, LLC (“Center Stage”),[1] and Generator Source, LLP, d/b/a Diesel Service & Supply (“Generator Source”), determined that Consolidated Electrical had wrongfully obtained injunctive relief in bad faith; thus, the trial court awarded Center Stage and Generator Source costs, damages, and attorney fees in an amount in excess of the *645 injunction bond. Consolidated Electrical appealed. We dismiss Consolidated Electrical’s appeal insofar as it addresses the trial court’s decision, to dissolve the injunction. However, because we find that Center Stage and Generator Source failed to establish that Consolidated Electrical acted in bad faith in obtaining the injunction, we reverse the trial court’s determination that Consolidated Electrical owed costs, damages, and attorney fees in excess of the amount of the injunction bond.

Facts and Procedural History

On July 9, 2009, Consolidated Electrical entered into an agreement -with Alliance Construction Co., Inc. (“Alliance Construction”), in which Consolidated Electrical agreed to provide electrical work as a subcontractor on the construction of a bingo pavilion and amphitheater project in Do-than for Center Stage, the owner of the project. As part of that contract, Consolidated Electrical was to deliver two 1,500 kilowatt diesel-fuel generators and install them on Center Stage’s property. Consolidated Electrical purchased the generators from Thompson Tractor Company, Inc. (“Thompson Tractor”), of Birmingham, and, pursuant to a financing arrangement with Consolidated Electrical, Thompson Tractor perfected a security interest in the generators by filing a UCC financing statement with the Alabama Secretary of State naming Consolidated Electrical as the debtor. Consolidated Electrical installed the generators on Center Stage’s property in November 2009.
In July 2011, Center Stage and Generator Source, a corporation whose principal place of business is in Colorado, negotiated a sale of the generators for a purchase price of $285,000. During the negotiations, Center Stage informed Generator Source that there were no liens or encumbrances on the generators. On July 29, 2011, Generator Source paid the amount of the agreed-upon purchase price by wire transfer. Generator Source scheduled a freight pickup of the generators in Dothan for August 22, 2011, which required the utilization of two flatbed trucks and cranes capable-of lifting the generators.
On August 2, 2011, Consolidated Electrical filed in the Houston Probate Court a lien on “both the land [belonging to Center Stage] and the buildings and improvements thereon, and the said land, including the land on which each of the buildings and improvements thereon are located.” The stated purpose of the filing of the hen was to “secure an indebtedness of One Million Eighty-three Thousand One Hundred Twenty Two U.S. Dollars ($ 1,083/ 122.00), with interest, from February 3, 2011 plus costs of work labor, goods and services that [Consolidated Electrical] supplied and provided to and for the benefit and improvement of the property and that was used in and contributed to the construction of the buildings and ■ improvements thereon.... ” The lien did not expressly reference the generators.
On August 16, 2011, Consolidated Electrical was made aware of Center Stage’s agreement with Generator Source to sell the generators. On August 17, 2011, Consolidated Electrical filed a petition for in-junctive relief in thé trial court, naming Center Stage as the defendant and seeking to restrain Center Stage from selling the generators to Generator Source. In the petition, Consolidated Electrical asserted that it was the owner of the generators, that Center Stage had not paid Consolidated Electrical for the generators, that Consolidated Electrical owed money to Thompson Tractor for the generators, and that Center Stage was in the process of selling the generators to Generator Source. Consolidated Electrical further asserted that it would “suffer irreparable injury in the form of the loss of collateral *646 and/or loss of profit.” Consolidated Electrical attached to the petition for injunctive relief an affidavit of Mahmoud Affan, Consolidated Electrical’s chief financial officer. Affan averred that the generators were a part of a “mechanics lien” that Consolidated Electrical had filed in the Houston Probate Court on August 2, 2011. Consolidated attached the lien to the petition.
The trial court conducted a hearing on the petition on August 22, 2011. Counsel for Consolidated Electrical and for Center Stage were present at the hearing and presented oral arguments to the trial court. The trial court did not receive testimony at this hearing. Consolidated Electrical contended that the generators were subject to a security interest established by Thompson Tractor and that Consolidated Electrical had not paid Thompson Tractor for the generators because Center Stage had not paid for the work Consolidated Electrical had done on the Center Stage property. Consolidated Electrical argued that Thompson Tractor’s security interest was still valid. Following that hearing, the trial court entered an order granting Consolidated Electrical a preliminary injunction and directing Center Stage to suspend the sale of the generators to Generator Source. Pursuant to Rule 65(c), Ala. R. Civ. P., the trial court also set an injunction bond in the amount of $15,000. The trial court also entered an order on August 23, 2011, directing Center Stage to keep the generators on its property until further notice of the court. During the August 22 hearing and before the trial court ruled on the petition for an injunction, one of the generators had been placed on a truck and had been removed from the Center Stage property to be delivered to Colorado.
On August 24, 2011, Generator Source filed a motion to intervene in the action pursuant to Rule 24, Ala. R. Civ. P. Generator Source asserted that it was a bona fide purchaser in good faith of the generators. The trial court entered an order on August 26, 2011, granting Generator Source’s motion to intervene. On August 26, 2011, Generator Source filed a motion to dissolve the preliminary injunction that had been issued on August 22, 2011, asserting, in part, that “the liens which were presented to [the trial court] at the hearing on August 22, 2011, in connection with the subject generators were neither timely filed nor do they apply to the generators sold by [Center Stage] to [Generator Source].” Generator Source attached to its motion an affidavit executed by Edward A. Vecchiarelli, Jr., its vice president of operations, detailing the history of the sale of the generators. He testified that, in July 2011, he negotiated with a representative of Center Stage for the purchase of the generators. He testified that he was not aware of any liens pertaining to the generators at the time of the purchase, that a Center Stage representative had informed him that the generators were not subject to any liens, and that a lien search Generator Source conducted on August 26, 2011, through the Delaware Secretary of State did not produce any evidence indicating that a lien existed on the generators. He testified that upon receipt of a proper invoice from Center Stage on July 29, 2011, Generator Source had paid the purchase price and had accepted ownership of the generators.
On August 29, 2011, the trial court conducted a hearing on Generator Source’s motion to dissolve the injunction. At that hearing, the trial court received the testimony of Michael Ryan Newer, vice president of Center Stage, and Patrick Merritt, Consolidated Electrical’s vice president of operations. Merritt testified that be became aware on August 16, 2011, that Center Stage had sold the generators. He testified that Consolidated Electrical had *647 not completed its contract with Alliance Construction. He testified that Center Stage still owed approximately $1.2 million dollars to Consolidated Electrical, that Consolidated Electrical still owed Thompson Tractor for the generators, and that Thompson Tractor had placed a UCC financing lien on the generators, which lien listed Consolidated Electrical as the debt- or. Under cross-examination from Generator Source’s counsel, Merritt testified concerning Consolidated Electrical’s alleged security interest in the generators:
“Q. Tour,’ being Consolidated Electric[al]’s security interest. You’re claiming a security interest in these — in these generators, are you not?
“A. I provided them to the facility, yes.
“Q. Well—
“A. Per my contract.
“Q. I appreciate that. But my question is a pretty specific question. Are you or are you not claiming a security interest in these generators?
“A. I don’t know the legal term of what a security interest is when it— when I’m providing a generator and are supposed to be paid for it. So I can’t answer that question.
“Q. You don’t know what — you’re the vice president of operations of this company and you can’t answer the question of whether or not your company is asserting a security interest in these generators; am I correct?
“A. I guess, if that’s — if that’s how you want to word it, that’s correct.”
On August 31, 2011, the trial court entered an order granting Generator Source’s motion to dissolve the injunction, stating:
“This court specifically finds that [Consolidated Electrical] delivered the generators at issue in this case to [Center Stage], and that this delivery was accomplished in accordance with a written contract entered into evidence as ‘court exhibit 1.’ The court finds that [Consolidated Electrical] fully completed the delivery of the generators and that title to the generators passed to the [Center Stage] at the time of that delivery. The court further finds that the [Consolidated Electrical] failed to retain or record a lien or security interest in the said generators. Although [Consolidated Electrical] claimed in its initial pleadings filed in this case that it filed a lien against the generators, a reading of the lien reveals that it does not apply to or even mention those items. Therefore, as title has passed to the [Center Stage] from [Consolidated Electrical] without the reservation of a security interest, and as no valid lien attached to the generators prior to their sale to the [Generator Source] by [Center Stage], the preliminary injunction is hereby dissolved, and the court’s order of August 23, 2011, is further set aside.”
At no point did Center Stage or Generator Source request the trial court to increase the amount of the injunction bond.
On September 7, 2011, Center Stage filed a motion pursuant to Rules 65(c) and 65.1, Ala. R. Civ.App., to tax costs, attorney fees, and expenses against Consolidated Electrical, arguing that it had been damaged in the amount of $15,763.85, by the wrongful injunction. On September 15, 2011, Generator Source filed a similar motion to tax costs, arguing that it had been damaged in the amount of $18,909.08. Neither motion alleged that Consolidated Electrical had acted in bad faith in seeking the injunction. The trial court held a hearing on the motions on September 22, 2011. At that hearing, counsel for Generator Source argued, without asserting that Consolidated Electrical had acted in bad faith, that the trial court could, if it found *648 that Consolidated Electrical had acted in bad faith, award costs, damages, and attorney fees to Center Stage and Generator Source in an amount- above the injunction-bond amount. •
On October 10, 2011, the trial court entered an order stating that Center Stage and Generator Source were entitled to the relief requested in their motions to tax costs but that the trial- court required further clarification on the expenses incurred due to the injunction; thus, the trial court set the matter for a hearing on October 20, 2011. On November 10, 2011, the trial court entered an order granting Center Stage’s and Generator Source’s motions to tax costs pursuant to Rule 65, -stating:
“The court finds that the request for injunctive relief was not made in good faith in this case. The court specifically finds that [Consolidated Electrical] represented that the generators in question were subject to security interests or liens. ■ This court relied heavily upon these allegations in deciding to enjoin [Center Stage] in this case. However, the evidence failed to provide a factual basis for the'se allegations. Accordingly, the court finds that [Generator Source] and [Center Stage] are not limited to the amount of the bond as posted by [Consolidated .Electrical] in this case. The surety shall be liable for all sums due [Generator Source], up to the posted amount of $15,000.00. [Consolidated Electrical] shall be responsible for payments of all other amounts to [Generator Source] and [Center Stage] not cov-. ered by the surety.”
The trial court ordered Consolidated Electrical to pay $15,809.08 in costs, damages, ■ and attorney fees to Generator Source, and $8,732.55 in costs, damages and attorney fees to Center Stage, for a total award of $24,541.63. The trial court ordered that the surety for Consolidated Electrical was liable only up to the amount of the bond, with Consolidated Electrical being responsible for the total amount awarded. On December 12, 2011, Consolidated Electrical filed a motion to alter, amend, or vacate the judgment.[2] Following a hearing, the trial court entered an order on January 6, 2012, denying Consolidated Electrical’s postjudgment motion. On February 17, 2012, Consolidated Electrical filed a notice of appeal. On that same day, Consolidated Electrical filed in the trial court a suggestion of bankruptcy, stating that Center Stage had filed a bankruptcy petition in the United States Bankruptcy Court for the Middle District of Alabama. Consolidated Electrical further requested that the proceedings be stayed. On April 10, 2012, pursuant to the suggestion of bankruptcy filed in -the trial court, this ' court entered an order'" staying the proceedings on" appeal. On June 19, 2014, Generator Source filed a notice with this court stating that the bankruptcy proceedings had been dismissed and that the stay in bankruptcy had been dissolved. That same day, this court entered an order reinstating the appeal. This court transferred the appeal to the supreme court for lack of subject-matter jurisdiction. The supreme court transferred the case to this court, pursuant to § 12-2-7, Ala.Code 1975.

Discussion

On appeal, Consolidated Electrical argues (1) that it had a valid lien on the generators- at the time Center Stage sold the generators to Generator Source, (2) that Generator Source could not claim to *649 be a bona fide purchaser in good faith of the generators when it knew that new construction was being done involving the generators, and (3) that the trial court erred in determining that it acted in bad faith to justify an award in excess of the amount of the injunction-bond.
No party has addressed this court’s jurisdiction over this appeal as it relates to the timeliness of Consolidated Electrical’s filing of the notice of appeal from the trial court’s order of August 31, 2011, dissolving the injunction, from which part of this appeal is taken. Jurisdictional issues, however, are of such significance that an appellate court may take notice of them ex mero motu. Wallace v. Tee Jays Mfg. Co., 689 So.2d 210, 211 (Ala.Civ.App.1997).
Our supreme court has held that “an order that is final other than as to costs and fees is a final judgment from which any appeal must be taken within 42 days.” Holman v. Bane, 698 So.2d 117, 120 (Ala.1997). In its petition, Consolidated Electrical sought only injunctive relief and did not assert any underlying claims against Center Stage, Center Stage and Generator Source did not file any counterclaims or cross-claims. Thus, the August 31, 2011, order adjudicated the only claim asserted in the action, -and the only issue remaining when the August 31 order-was entered related to the taxation of costs, damages, and attorney fees against Consolidated' Electrical. Although, as discussed below, Center Stage and Generator Source could have filed a separate action to recover costs, damages, -and attorney fees for Consolidated Electrical’s wrongfully obtaining an injunction, they, instead, opted to proceed for recovery under Rules 65(c) and 65.1, Ala. R. Civ. P. The procedures available to a wrongfully enjoined party under Rules 65(c) and 65.1 do not constitute a separate claim for relief when commenced as a part of the initial injunction proceedings. See Holman, 698 So.2d at 120 (“Because [attorney fees] are statutorily awardable only as costs, they are not, for the purposes of determining finality of an order, to be considered as a separate claim by one litigant or group of litigants against another, any more than would, be any other request by one party that costs be taxed against some other party.”). Rather, we conclude that invoking those procedures is properly viewed as tantamount to filing a motion to tax costs and attorney fees. Although the proceeding to recover costs, damages, and attorney fees arising from the issuance of the wrongful injunction remained pending before the trial court, the August 31, 2011, order dissolving the injunction was a final, appealable judgment from which Consolidated Electrical had 42 days to appeal. See Jefferson Cnty. Comm’n v. ECO Pres. Servs., L.L.C., 788 So.2d 121, 125 (Ala.2000) (holding that the 14-day limit prescribed by Rule 4(a)(1)(A), Ala. RApp. P., applies only to a interlocutory order pertaining to an injunction request and that a final judgment' on an injunction request that is not interlocutory is appealable within 42 days of the entry of the judgment, without regard to Rule 4(a)(1)(A)). Consolidated Electrical filed 'its notice of appeal from the August 31, 2011, order on February 17, 2012, well beyond the 42-day period for filing a notice of appeal. ' Consolidated Electrical’s arguments that it had a valid lien on the generators at the time Center Stage sold- the generators to Generator Source and that Generator Source was not a bona fide purchaser in good faith relate to- the propriety of the trial court’s August 31, 2011, order. This court lacks subject-matter jurisdiction to consider arguments pertaining to that order. Thus, those arguments are not properly before this court, and we dismiss Consolidated Electrical’s appeal ón those issues.
*650 Consolidated Electricals appeal as to the November 10, 2011, order assessing costs, damages, and attorney fees, however, is timely. See Holman, 698 So.2d at 120. We will address Consolidated Electrical’s arguments regarding the trial court’s order determining that Consolidated Electrical acted in bad faith in obtaining the injunction and whether Center Stage and Generator Source were entitled to an award beyond the amount of the injunction bond.
Rule 65(c), Ala. R. Civ. P., requires that the party applying for a preliminary injunction give security “in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorney fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained .... ” “In order for a party to be liable on the bond posted pursuant to Rule 65(c), the [trial] court must find that the party [enjoined] had been ‘wrongfully’ enjoined.” Marshall Durbin & Co. v. Jasper Utils. Bd., 437 So.2d 1014, 1027 (Ala.1983). A wrongfully enjoined party may proceed against the surety of an injunction bond pursuant to the procedure set out in Rule 65.1, Ala. R. Civ. P., which provides that
“Whenever these rules require or permit the giving of security by a party, and security is given in the form of a bond or stipulation or other undertaking with one or more sureties, each surety submits to the jurisdiction of the court and irrevocably appoints the clerk of the court as the surety’s agent upon whom any papers affecting the surety’s liability on the bond or undertaking may be served. The surety’s liability may be enforced on motion without the necessity of an independent action. The motion and such notice of the motion as the court prescribes may be served on the clerk of the court, who shall forthwith mail copies to the sureties if their addresses are known.”
In lieu of the motion procedure provided Rule 65.1, a party may also commence an independent action for recovery on an injunction bond. Ex parte Waterjet Sys., Inc., 758 So.2d 505, 511 (Ala.1999) (citing Talladega Little League, Inc. v. Anderson, 577 So.2d 1293, 1296 (Ala.1991)).
“[T]he trial court must give the enjoined or restrained party the opportunity to proceed against the injunction bond, to prove that he or she was wrongfully enjoined or restrained, and ‘to prove their damages, if any, by the imposition of the injunction.’ ” Waterjet Sys., Inc., 758 So.2d at 513 (quoting Churchill v. Board of Trs. of the Univ. of Alabama in Birmingham, 409 So.2d 1382, 1391 (Ala.1982) (Torbert, C.J. dissenting)). For proposes of recovering on an injunction bond, the term “wrongfully enjoined” does not require an element of bad faith, and good faith is not a defense to claimed liability on the bond. Waterjet Sys., Inc., 758 So.2d at 512. Rather, “a party is wrongfully enjoined ‘when it turns out the party enjoined had the right all along to do what it was enjoined from doing.’ ” Id. (quoting Nintendo of America, Inc. v. Lewis Galoob Toys, Inc., 16 F.3d 1032, 1036 (9th Cir.1994)).
The amount of costs, damages, and attorney fees to be awarded to the wrongfully enjoined party is a matter within the discretion of the trial court. Waterjet Sys., Inc., 758 So.2d at 510. However, unless the party obtaining the injunction acted in bad faith, “recovery on an injunction bond is limited to the amount of the bond and [a wrongfully enjoined party] cannot recover against the principal or the surety of an injunction bond an amount in excess of the amount of the bond as stipulated or determined by the trial court.” Waterjet Sys., Inc., 758 So.2d at 513 (citing 13 James Wm. Moore, Moore’s Federal *651 Practice § 65.53 (3d ed.1998)). A wrongfully enjoined party may recover costs, damages, and attorney fees in excess of the amount of the bond when the party obtaining the injunction acted in bad faith. “If a plaintiff seeks an interlocutory injunction in bad faith, the defendant can recover damages from the plaintiff in excess of the amount of the bond, or the defendant can pursue an independent action for malicious prosecution.” Waterjet Sys., Inc., 758 So.2d at 513. Our appellate courts have not defined the term “bad faith” as it relates to procurement of an injunction under Rule 65. As noted above, our supreme court stated in Waterjet Systems, that a party who has been wrongfully enjoined may pursue an independent action asserting malicious prosecution. Id. Thus, in an injunction proceeding in which a wrongfully enjoined party asserts that the enjoining party acted in bad faith and seeks recovery of costs, damages, and attorney fees exceeding the bond amount, the wrongfully enjoined party must make the same showing that is required of a party to prevail on a cause of action asserting malicious prosecution.
The elements of malicious prosecution include:
“(1) that the present defendant instituted a prior judicial proceeding against the present plaintiff; (2) that in instituting the prior proceeding the present defendant acted without probable cause and with malice; (3) that the prior proceeding ended in favor of the present plaintiff; and (4) that the present plaintiff was damaged as a result of the prior proceeding.”
Wal-Mart Stores, Inc. v. Goodman, 789 So.2d 166, 174 (Ala.2000) (citing Delchamps, Inc. v. Bryant, 738 So.2d 824, 831-32 (Ala.1999)). In this case, we focus on the elements of lack of probable cause and the presence of malice. “In a civil proceeding, all that is necessary for probable cause is that the claimant ‘reasonably believe that there is a chance that [the] claim may be held valid upon adjudication.’ ” Leak v. Avco Fin. Servs., 646 So.2d 642, 644 (Ala.1994) (quoting Fina Oil & Chem. Co. v. Hood, 621 So.2d 253, 257 (Ala.1993)).
“‘Malice in a malicious prosecution action has been defined as whatever is done willfully and purposely, whether the motive is to [injure the] accused, to gain some advantage to the prosecutor, or through mere wantonness or carelessness, if at the same time wrong and unlawful within the knowledge of the actor.
“ ‘Malice may be inferred from the want of probable cause, or from defendant’s conduct, where such conduct will admit of no other reasonable construction.
“ ‘Furthermore, in an action for malicious prosecution, malice is an inference of fact, not of law, and must be determined by trier of facts as any other issue of fact is tried, and may be inferred from an absence of probable cause unless facts disclose that the defendant in the malicious prosecution action was acting in good faith.’ ”
Willis v. Parker, 814 So.2d 857, 863-64 (Ala.2001) (quoting Dillon v. Nix, 55 Ala. App. 611, 613-14, 318 So.2d 308, 310 (Ala.Civ.App.1975) (emphasis added)).
For purposes of this appeal, there has been a showing that Center Stage was wrongfully enjoined from selling the generators to Generator Source. Thus, costs, damages, and attorney fees at least up to the amount of the injunction bond were appropriate. The question, however, is whether the trial court correctly determined, based on the evidence presented at the hearings, that Consolidated Electrical acted in bad faith and, in turn, wheth *652 er Center Stage and Generator Source were entitled to a total of $24,541.63 in costs, damages, and attorney fees, an amount that exceeds the $15,000 injunction bond by $9,541.63. In order for Center Stage and Generator Source to prevail on this issue, they were required to show that Consolidated Electrical obtained the injunction without probable cause and with malice. Our review of the record reveals that Center Stage and Generator Source offered insufficient evidence from which the trial court could have found that Consolidated Electrical acted without probable cause and that no evidence was presented to the trial court to support a contention that Consolidated Electrical acted with malice. In support of its petition for an injunction, Consolidated Electrical attached a lien it had filed as to Center Stage’s property. According to Merritt’s testimony, Center Stage owed approximately $1.2 million to Consolidated Electrical, and the installation of the generators had been a part of the contract. Although Consolidated Electrical presented an incorrect argument to the trial court that it and/or Thompson Tractor had established a security interest in the generators, we cannot conclude that its petitioning for and obtaining injunctive relief was, based on the record before us, instituted without probable cause and with malice. Because the evidence before the trial court did not support a finding that Consolidated Electrical acted in bad faith, we conclude that the trial court éxceeded its discretion in awarding Center Stage and Generator Source costs, damages, and attorney fees in an amount in-excess of the bond amount.
For the foregoing reasons, we dismiss Consolidated Electrical’s appeal insofar as it concerns the order dissolving the injunction. We reverse the trial court’s judgment of November 10, 2011, and remand the cause to the trial court with instructions to vacate the award of costs, damages, and attorney fees that Consolidated Electrical must pay to General Source and Center Stage for the wrongful injunction to the extént'that the award exceeds the total bond amount of $15,000 and to enter an award that does not exceed the bond amount.
APPEAL DISMISSED IN PART; ORDER OF NOVEMBER 10, 2011, REVERSED; AND CAUSE REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. The record reveals that the correct name of Center Stage might be Resorts and Entertainment Group II, LLC. However, no party sought to correct the name. To remain consistent with the trial court record, we will refer to this party as Center Stage.

. The 30th day for filing a postjudgment motion to alter, amend, or vacate the judgment fell on December 10, 2011. Because that day was a Saturday, Consolidated Electrical's postjudgment motion was timely filed on Monday, December 12, 2011. See Rule 59(e), Ala. R. Civ. P., and Rule 5(a), Ala. R. Civ. P.