This appeal arises from a defamation action based on printed and oral statements regarding conduct of State Senator Henry (Hank) Sanders; his wife, attorney Rose Sanders; and Dallas County District 3 Commissioner Perry Varner. Mr. Sanders is a state senator representing the 23rd District and is chairman of the Senate's Finance and Taxation/Education Fund Committee.
In early 1997, Cecil Williamson, an elected member of the Dallas County School Board, began to gather information regarding Senator Sanders's conduct as a member of the Alabama Senate. Williamson ultimately turned over this information to the mayor of Selma, Joe T. Smitherman. On April 10 and April 17, 1997, Smitherman held press conferences concerning this information. Smitherman expressed concern over possible violations of state ethics laws by Senator Sanders. Smitherman and Williamson also circulated a publication dealing with the same subject matter. Williamson gave a radio interview in which he reiterated statements Smitherman had made at the press conferences.
On or about June 2, 1997, Smitherman and Williamson received letters from an attorney representing Henry Sanders, Rose Sanders, and Perry Varner. Each letter demanded retractions. On June 10, 1997, Smitherman and Williamson filed a declaratory-judgment action in the Dallas County Circuit Court, against Varner and the Sanderses (CV-97-178). This action initially sought a judgment declaring whether Varner and the Sanderses were "public officials" and/or "public figures," whether Smitherman and Williamson's publications were defamatory or malicious, and whether retractions were necessary under the provisions of § 6-5-186, Ala. Code 1975. Two days later, on June 12, Henry Sanders, Rose Sanders, and Varner sued Smitherman and Williamson in the Circuit Court of Pickens County, alleging slander, libel, and abuse of process (CV-98-64).
Several days later, Smitherman and Williamson amended their declaratory-judgment complaint to ask the court to declare that Smitherman's statements made during his April 10 and April 17, 1997, press conferences and the statements made by Williamson during his radio interview were political speech and, as such, were protected by the First Amendment to the United States Constitution. Smitherman and Williamson also filed a motion to transfer the Pickens County action (CV-98-64) to Dallas County; the trial court granted that motion on January 30, 1998, and transferred the action to Dallas County.
After all the judges for the Fourth Judicial Circuit (which includes Dallas County) recused themselves, both cases were assigned to Judge Joseph S. Johnston of the Thirteenth Judicial Circuit (Mobile County), and the cases were consolidated for purposes of discovery. Both cases were set for trial on March 29, 1999, with all dispositive motions to be filed on or before January 29, 1999. In both actions, all parties filed timely motions for summary judgments. The court, on February 3, 1999, scheduled a hearing on the summary-judgment motions for February 18, 1999. In its order of February 3, 1999, the trial court, with regard to the hearing on the summary-judgment motions, stated that all responsive pleadings, along with supporting briefs and materials, were to be filed with the Circuit Court of Dallas County and received by the trial judge not later than Monday, February 15, 1999. Varner and the Sanderses, however, did not file affidavits and other materials supporting their motion or opposing Smitherman and Williamson's summary-judgment motion until February 16, 1999; this delay was due to the fact that February 15, 1999, was a State holiday. Based on the language in the order specifying that such materials were to be "received by the trialjudge" by February 15, 1999, the trial court held that the submission of those materials after that date was untimely. *Page 71 
After it had held the hearing on February 18, 1999, the trial court entered a summary judgment in favor of Smitherman and Williamson in the declaratory-judgment action. The trial court also vacated an earlier order denying Smitherman and Williamson's motion to dismiss the defamation action filed against them and granted that motion. The trial court's detailed order in the declaratory-judgment action set forth each allegation of defamation made by Varner and the Sanderses and explained the rationale for the summary judgment. The trial court denied Varner and the Sanderses' motion for "reconsideration" in the defamation action.
In one order disposing of both actions, the trial court held that Senator Sanders and Varner were "public officials" and that Rose Sanders was a "public figure." This holding called for the court to apply the "clear-and-convincing-evidence" standard in determining whether the statements concerning ethics violations had been made knowingly or recklessly. See New York Times Co. v.Sullivan, 376 U.S. 254, 279-80 (1964). Neither the Sanderses nor Varner challenges this holding on appeal, and we find no basis to hold it erroneous.
On appeal from the dismissal of their defamation action, the Sanderses and Varner raise three issues: (1) whether the statements made by Smitherman and Williamson were capable of having a defamatory meaning; (2) whether sufficient evidence was provided to the trial court to warrant a finding of actual malice; and (3) whether the defense of truth is applicable. While the Alabama Ethics Commission subsequently found no wrongful conduct, Varner and the Sanderses never refuted the underlying facts giving rise to the allegations of ethical violations. In this context, the issues become (1) whether accusations concerning actual violations of state ethics laws were, as a matter of law, made with actual malice, i.e., with knowledge of their falsity or with reckless disregard for their truth or falsity; and (2) whether the publication of the related pamphlet was defamatory.
 "When, as here, the plaintiff is a public figure, he cannot recover unless he proves by clear and convincing evidence that the defendant published the defamatory statement with actual malice, i.e., with `knowledge that it was false or with reckless disregard of whether it was false or not.' New York Times v. Sullivan, 376 U.S. 254, 279-280 (1964). Mere negligence does not suffice. Rather, the plaintiff must demonstrate that the author `in fact entertained serious doubt as to the truth of his publication,' St. Amant v. Thompson, 390 U.S. 727, 731 (1968), or acted with a `high degree of awareness of . . . probable falsity.' Garrison v. Louisiana, 379 U.S. 64, 74 (1964)."
Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 510 (1991) (citations omitted). When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact.Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989). In a ruling on a summary-judgment motion in a defamation action involving a public figure, the trial judge must determine whether the plaintiff has shown by clear and convincing evidence that the defendant acted with actual malice. Deutcsh v.Birmingham Post Co., 603 So.2d 910, 911 (Ala. 1992), cert.denied, 506 U.S. 1052 (1993).
In support of their motion for a summary judgment in the defamation action, Smitherman and Williamson provided affidavits and public records that they say support their assertion that all statements they made or published concerning the *Page 72 
Sanderses and/or Varner were true. Because truth is a complete bar to a defamation action, Deutcsh, 603 So.2d at 911, once Smitherman and Williamson submitted substantial evidence indicating their statements were true, the burden shifted to the Sanderses and Varner to present substantial evidence indicating that the statements made about them were false.
The Sanderses assert that they submitted affidavits and other materials supporting their defamation claims. Varner submitted no evidence.[1] The trial court refused to consider the information submitted by the Sanderses because it held their materials to have been untimely filed. The Sanderses argue that the submissions were timely because Rule 6(a), Ala.R.Civ.P., states that in the event a due date falls on a legal holiday, the submitting party has until the end of the next day that is not a Saturday, Sunday, or legal holiday. Although the trial court specified Monday, February 15, 1999, as the due date for the submission of the materials, that day was a legal holiday, George Washington's Birthday. The Sanderses were therefore entitled to submit their affidavits and supporting materials on the next day that was not a legal holiday. See In re American HealthcareManagement, Inc., 900 F.2d 827, 831 (5th Cir. 1990) (holding that a bankruptcy rule equivalent to Rule 6(a), Ala.R.Civ.P., should be construed to give the benefit of extending the deadline for submission to the day after the holiday, regardless of whether the deadline is expressed as the last day of a period of days or as a date certain).
It is beyond dispute that the filing was made in Dallas County on Tuesday, February 16, 1999, the first day after the legal holiday that was not a legal holiday in Dallas County. However, February 16, 1999, was Mardi Gras, a legal holiday in Mobile County. § 1-3-8, Ala. Code 1975. Smitherman and Williamson do not suggest that the materials were not received by the trial judge on Wednesday, February 17, 1999, the first day of the week that was not a legal holiday in Mobile County. Thus, we conclude that the materials were timely filed.
The trial court's order of March 15, 1999, also states, however, that even if the materials had been timely submitted, they would not have been admitted because they did not comply with Rule 56(e).[2] With regard to the deficiency of the submitted materials, the trial court stated:
 "The materials and exhibits attached to the affidavits are not certified, sworn to or authenticated in any manner. The affidavits are replete with irrelevant and immaterial matter, including inadmissible hearsay and many of the statements contained therein are based only on the conjecture and speculation of the affiants or on their personal belief, rather than on personal knowledge based upon the facts which would be admissible in evidence."
"Under Rule 56(e), an opposing affidavit must be made on personal knowledge, must set forth facts that would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated." Black v. Reynolds,528 So.2d 848, 849 (Ala. 1988). The Sanderses' affidavits refer to matters *Page 73 
beyond their personal knowledge; they rely on unsworn statements of third parties; and they otherwise relate to matters collateral to the issues before the court in this defamation proceeding. These affidavits, despite the defects, present relevant and admissible evidence partially supporting the Sanderses' claims.[3] They document previous confrontations with Smitherman. "Actual malice `. . . may be shown by evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like, emanating from the defendant, or by the violence of the defendant's language, the mode and extent of publication, and the like.'" Willis v. Demopolis Nursing Home, Inc., 336 So.2d 1117,1120 (Ala. 1976). However, proof of actual malice in the context of claims against public figures also requires a showing that the statements were made with actual knowledge of their falsity or with reckless disregard for their truth or falsity. New York Times Co.v. Sullivan, 376 U.S. at 279-80.
Even considering the affidavits and supporting materials, we must conclude that the Sanderses and Varner still failed to make any specific allegations of falsity to rebut the defendants' assertion of truth as a complete defense. As to the effect of the letter from the Alabama Ethics Commission finding no ethics-law violation, the trial court correctly observed that it established only that there was no basis to find that the actions of Senator Sanders violated state ethics law, and not that the underlying statements of Smitherman and Williamson had been false.[4]
The trial court also examined the statements by Smitherman and Williamson alleging that the Sanderses and Varner had violated state ethics laws. Its order carefully distinguished between statements made by Smitherman about filing a complaint with the Alabama Ethics Commission and statements about the underlying facts. As the trial court noted, the question whether evidence is sufficient to support a finding of actual malice is a question of law. Harte-Hanks Communications, Inc. v. Connaughton,491 U.S. 657, 685 (1989). As to statements made by Smitherman and Williamson about ethics violations, the trial court held:
 "Therefore, this Court cannot find any evidence which might tend to meet the `clear and convincing standard' that Smitherman's statements at the press conferences were knowingly false or that he recklessly made them without regard for their truth or falsity. Moreover, this Court does deem it important that Smitherman made it clear that he was requesting an investigation by the State Ethics Commission into whether or not the undisputed actions of Senator Sanders constituted a violation of the State Ethics Law and that, consequently, it would be the State Ethics Commission *Page 74 which determined whether there had been any violation of law."
(Order at 13, R. 226.) (Emphasis added.)
The trial court carefully evaluated the totality of the circumstances and the context surrounding Smitherman's statements concerning violations of ethics laws. It correctly concluded that the evidence presented was insufficient to show by "clear and convincing evidence" that the alleged defamatory statements, taken as a whole, were knowingly false or that they were made recklessly and without regard for their truth or falsity. Thus, the materials submitted by the Sanderses do not offer substantial evidence of malice, as required by New York Times Co. v. Sullivan, supra.
We must view the alleged defamatory statements in light of the protections given to political speech by the First Amendment. Despite the history of animosity between the parties in this case, a history shown by the Sanderses' affidavits, the fact remains that Smitherman and Williamson were speaking about Senator Sanders and Varner, public officials, and Rose Sanders, also a public figure, on matters of public concern. Debate concerning Senator Sanders's conduct while pursuing his duties as a member of the Senate is precisely the kind of debate that deserves the highest protections provided by the First Amendment. The United States Supreme Court has expressed the importance of free debate on such issues:
 "Thus we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.
". . . .
 "`In the realm of religious faith, and in that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his neighbor. To persuade others to his own point of view, the pleader, as we know, at times, resorts to exaggeration, to vilification of men who have been, or are, prominent in church or state, and even to false statement. But the people of this nation have ordained in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy.'"
New York Times Co. v. Sullivan, 376 U.S. at 270-71 (quotingCantwell v. Connecticut, 310 U.S. 296, 310 (1940)).
After carefully reviewing the allegedly defamatory remarks, we agree with the trial court's holding — that the remarks are, at their core, political speech concerning matters of public concern and that they are, thus, subject to the full measure of protection under the First Amendment. The Sanderses miss the mark when they attempt to shift the attention from the factual predicate for the opinion Smitherman expressed in the statements, to the ultimate disposition by the Alabama Ethics Commission. The underlying facts, which are the basis for Smitherman's opinion, are the relevant area of inquiry and, as previously indicated, they have not been refuted. This case presents a classic example of statements of opinion relating to matters of public concern. One cannot recover in a defamation action because of another's expression of an opinion based upon disclosed, nondefamatory facts, no matter how derogatory the expression may be.Restatement (Second) of Torts § 566 cmt. c (1977). This is so because the recipient of the information is free to accept or reject the opinion, based on his or her independent evaluation of the disclosed, nondefamatory facts. Redco Corp. v. CBS, Inc.,758 F.2d 970, 972 (3d Cir.), cert. denied, 474 U.S. 843 (1985). The trial court properly entered the summary *Page 75 
judgment with regard to the statements expressing Smitherman's opinion that the Sanderses and Varner had violated state ethics laws, and, to the extent Williamson endorsed that opinion, his opinion as well.
Finally, with regard to the related pamphlet that was also alleged to be defamatory, we conclude that the trial court properly recognized the acronym used in the title as hyperbole or exaggeration for effect, not to be taken literally, as opposed to the accusation of a criminal act. The trial court correctly stated the governing law, as follows:
 "The United States Supreme Court commented upon the use of `imaginative expression' in Milkovich v. Lorain Journal Co., 497 U.S. 1, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1 (1990), and recognized constitutional limits on the type of speech which may be the subject of state defamation actions. There, the Supreme Court observed that in Greenbelt Cooperative Publishing Ass'n, Inc. v. Bresler, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970), it had rejected the contention that liability could be premised on the notion that the word `blackmail,' which had been used to characterize a real estate developer's negotiating position, implied that the developer had committed the actual crime of blackmail. The Court found that as a matter of constitutional law, the word `blackmail' in these circumstances was not slander when spoken, and was not libel when reported in the newspaper. The Court found that the use of this term was `rhetorical hyperbole, a vigorous epithet used by those who considered [the developer's] negotiating position extremely unreasonable.' [398 U.S. at 14]. In Hustler Magazine v. Falwell, 485 U.S. 46, 50, 108 S.Ct. 876, 879, 99 L.Ed.2d 41
(1988), the Supreme Court held that the First Amendment precluded recovery under a state emotional distress action for an ad parody which `could not reasonably have been interpreted as stating actual facts about the public figure [Rev. Jerry Falwell] involved'; and in [Old Dominion Branch No. 496, Nat'l Ass'n of] Letter Carriers v. Austin, 418 U.S. 264, 284-86, 94 S.Ct. 2770, 2781-82, 41 L.Ed.2d 745 (1974), the Court found the use of the word `traitor' in literary definition of a union `scab' could not be the basis for a defamation action under federal labor law since the term was used `in a loose, figurative sense' and was `merely rhetorical hyperbole, a lusty and imaginative expression of the contempt held by union members.' After discussing these prior decisions, the Milkovich Court stated the following:
 "`. . . [T]he Bresler-Letter Carriers-Falwell line of cases provides protection for statements that cannot `reasonably [be] interpreted as stating actual facts' about an individual. [Citation omitted.] This provides assurance that public debate will not suffer for lack of `imaginative expression' or the `rhetorical hyperbole' which has traditionally added much to the discourse of our Nation.' [497 U.S. at 20].'"
The trial court correctly concluded that the title of the pamphlet consisted of "imaginative expression" and "rhetorical hyperbole" traditionally used in public debate and therefore protected by the First Amendment. Deutcsh, 603 So.2d at 912.
AFFIRMED.
Hooper, C.J., and Maddox, Houston, See, Lyons, and Brown, JJ., concur.
Cook, Johnstone, and England, JJ., recuse themselves.
[1] Without affidavits from Varner, the trial court could determine only that no justiciable controversy existed between Varner and Smitherman and Williamson, because Varner failed to meet his burden after Smitherman and Williamson, in support of their summary-judgment motion, had submitted their evidence indicating that their statements were true.
[2] On Wednesday, February 17, 1999, before the hearing, Smitherman and Williamson filed a motion with the trial court requesting that portions of the Sanderses' reply brief, affidavits, and supporting materials be stricken for failure to comply with Rule 56(e), Ala.R.Civ.P. See Ex parte DiverseyCorp., 742 So.2d 1250, 1253 (Ala. 1999) (requiring a motion to strike matters not in compliance with Rule 56(e)).
[3] Although the motion and supporting materials filed by the Sanderses in opposition to Williamson and Smitherman's summary-judgment motion were filed on behalf of Varner as well as the Sanderses, there were no specific allegations of falsity made regarding statements purportedly applicable to Varner. The only references to Varner are contained in Rose Sanders's affidavit, which refers to Varner as being of "African descent" and further states that "Defendant Smitherman and Williamson have racial malice for Hank and Rose Sanders and Perry Varner." The Sanderses and Varner offer no evidence of any direct charge leveled specifically against Varner concerning possible or actual wrongdoing.
[4] In their reply brief, for the first time the Sanderses allege defamation with respect to their acquisition of a private condominium in Orange Beach. Even if we were to consider an argument raised for the first time in a reply brief on appeal, contrary to Kennesaw Life Accident Insurance Co. v. OldNational Insurance Co., 291 Ala. 752, 754-55, 287 So.2d 869, 871
(1973), the materials before us do not reflect that this argument was made to the trial court. We cannot reverse the trial court's summary judgment on grounds not presented to the court. See Exparte Ryals, 773 So.2d 1011 (Ala. 2000). *Page 76