MURDOCK, Justice.
Dolgencorp, LLC (“Dolgencorp”), appeals from a judgment entered on a jury verdict in the amount of $100,000 in favor of Michelle Spence in her action filed in the Autauga Circuit Court seeking damages arising from her arrest for shoplifting. We reverse and remand.
I. Facts
The evidence at trial showed the following. On April 16, 2013, Spence went to the Dollar General discount store located on McQueen Smith Road in Prattville to purchase some paper towels, toilet paper, mineral oil, and hair spray. Spence’s cousin, Kody Atchison, accompanied Spence to the store.[1] Cindy Welch was the manager working at the Dollar General store that day. Welch and Spence did not know each other before that day, even though Spence was a regular shopper at that particular Dollar General store.
Spence got a shopping cart outside the store. She placed her purse in the compartment of the cart where the child seat is located, and she entered the store. Welch testified that she was stocking merchandise when she saw Spence enter the store. Welch continued to watch Spence as Spence walked toward the health-and-beauty-aid section.
Once Spence reached an aisle of health and beauty products, she picked up a container of mineral oil. The evidence is conflicting as to what occurred next. Welch testified that she witnessed Spence place the mineral oil in her purse, which was open. Spence testified that she placed the mineral oil in the compartment of the cart near her purse. Welch testified that she began to “suspect” that Spence was up to something so she specifically watched Spence as she walked to the, next aisle. Spence selected a container of hair spray. According to Spence, she placed the hair spray in the top compartment of the cart. Spence admitted that the hair-spray container was not visible in the cart, but she stated that this was because it had rolled to the side of her purse and then became sandwiched between the back of the cart and her purse. Welch testified that she was standing right over Spence’s shoulder and she watched Spence place the hairspray container in her open purse and then close the purse by zipping it. Spence testified that this was not possible because the purse was too small to hold the containers of mineral oil and hair spray and that the zipper on the purse was broken. Spence stated at trial that she no longer had the purse because she threw it away at some point.
Spence testified that as soon as she put the hair spray into her cart Welch grabbed her by the arm “and hollered, ‘You’re trying to conceal that.’” Spence stated that she responded by picking up the hair spray and saying: “What are you talking about? This hair spray? I’m not trying to conceal anything. I plan to pay for everything I get today and I’ve got more shopping to do.” Spence testified that Welch took the hair spray from her, then handed it back to her. Spence testified that Welch continued to yank her arm and told her: “You better not try to leave here ... you have to stay here. ... I’m calling the police.” Spence stated that Welch then “just took off’ for the store office. Spence and Atchison followed Welch toward the front of the store and stood there while Welch went into the office and telephoned the police. Spence testified that there were *177 several people in the store at this time and that Welch’s handling of the situation embarrassed and humiliated her.
Approximately 15 or 20 minutes later, two Prattville police officers arrived at the Dollar General store.. Welch gave the police officers an oral statement of her version of what had happened. Spence requested that the officers review the videotape of the incident, but she was told that there was no video.[2] The officers arrested Spence at approximately 3 p.m.; she was taken to the police station in city hall.
Welch remained in the store and continued working, while arranging for someone else, to oversee the store while she went to the police station. Welch arrived at city hall between 4 p.m. and 5 p.m., at which time she signed a complaint alleging theft of property against Spence. A magistrate, judge signed the complaint shortly thereafter. Spence was taken to jail at approximately 5 p.m.
Spence unsuccessfully attempted to contact her mother regarding bail. Spence then contacted Atchison to come down to the police station to see what could be done about getting her released from jail. Gpt. Larry Nixon, the jail warden/administrator, testified that Spence would have been released from jail that same day if $500 cash had been paid to the magistrate judge by 5 p.m., but no payment was submitted. Nixon also testified that when Spence’s purse was inventoried it was found to contain $229.37 in cash. Spence spent the night in jail with eight other inmates in a large holding cell. The following day Atchison posted a cash bond of $150 (a reduction approved by the magistrate judge), and Spence was released.
The charges against Spence were dismissed after two court appearances because no witnesses appeared to testify against her. Welch quit working for Dol-gencorp not long after the incident—namely at the end of May 2013—in order to move to Ferriday, Louisiana, to be with her husband, who had cancer. Based on the testimony at trial and the briefs of the parties to this Court, it is undisputed that Welch did not tell anyone at Dolgencorp about the incident involving Spence before she left employment with the company.
Welch had started working for Dolgen-corp in December 2011. She testified that Dolgencorp trained its employees through the use of videos that, among other things, explained Dolgencorp’s Standard Operating Procedures (“SOPs”). Dolgencorp employees also were given an electronic copy of Dolgencorp’s employment handbook. Employees signed an acknowledgment form in which they attested that they had read and understood all information contained in the employment handbook. Welch signed an acknowledgment on December 5, 2011, at the outset of her employment with Dolgencorp, and she signed another one on April 13, 2013, three days before the incident involving Spence.
Welch testified that during her training she learned about a four-step approach for handling suspected shoplifters know as “ASAP.” The ASAP approach is contained in Dolgencorp’s “Shoplifting Prevention SOP.” Welch testified that she did not remember specifically ever seeing a written document that discussed the proper way to deal with a shoplifter, although she stated that she did read everything she attested to reading (by signing acknowledgment forms) during her training and employment.
Welch further testified that the first step in the four-step ASAP approach was to “approach” the subject. The second step was to “smile” from approximately five *178 feet away. The third step was to “ask” a “face-saving” question, The fourth step was to “proactively” offer assistance. A portion of the policy also states: “[I]f the customer produces the merchandise the employee is not to accuse them of stealing or attempt to detain them.” Another portion of Dolgencorp’s shoplifting SOP states: “[T]he best deterrent is customer service. Never engage in verbal accusation with anyone suspected of shoplifting. Never tquch anyone suspected of shoplifting or touch his or her personal belongings.” The SOP states that, if possible, a store manager should give the suspected shoplifter an opportunity to pay for the items in question before seeking assistance from law-enforcement authorities.
Welch admitted that she did not follow' Dolgencorp’s shoplifting SOP on April 16, 2013. She stated that she believed that the SOP provided “guidelines” on how to handle shoplifting situations, that the “procedures may not fit every situation,” - and that in “different situations you do different things.” Welch also admitted, however, that no one at Dolgencorp told her that, she did not have to follow the SOP in every situation.
Dolgencorp’s district manager for the store at which Welch was working conducted an annual performance review of Welch in 2012. Welch’s overall performance-review score was “good.” The performance review concluded:
“Store conditions have greatly improved-upon every visit to [store no.] 9090. Cindy works very hard and she needs to ensure all people in her store are working as hard as she is. Last year’s shrink results[3] were unacceptable and Cindy has made a good effort to change the current cycles trend. Cindy is a real team player and I look forward, to working with- him [sic] more in the future.”1
Welch testified that district managers discussed improving “shrinkage” with store managers at least once a year.
On June 23, 2014, Spence sued Dolgen-corp and Welch. She asserted claims of invasion of privacy, defamation, false imprisonment, and negligent and wanton training. Dolgencorp filed its answer on October 16, 2014,' denying all allegations. On June 15,12015, Spence filed an amended complaint in which she added claims asserting malicious prosecution and assault and battery against Dolgencorp and Welch. Dolgencorp filed its answer to the amended complaint on July 7, 2015.
Spence never perfected service' of her complaint oh Welch. On the first day of trial, Spence moved to dismiss Welch from the action, and the trial court granted the motion. The trial court’s written order stated simply: “Oral Motion to Dismiss Gindy Welch, granted.” ■
On July 21, 2015, following a two-day trial, the jury returned a general verdict in favor of Spence and against Dolgencorp in the amount of $100,000 in compensatory damages.[4] The trial court entered 'a judgment on'the jury’s verdict the same day.
On August 14, 2015, Dolgencorp filed, a “Renewed Motion for Judgment as a Matter of Law Post-Judgment and Motion for a New Trial.” On September 28, 2015, the trial court. denied Dolgencorp’s motion. Dolgencorp appealed to this Court on October 27, 2015.
II. Analysis
Dolgencorp first presents arguments as to why it believes the trial court erred in failing to enter a judgment as-a matter of law (“JML”) on the claims asserted by *179 Spence. Dolgencorp argues in the alternative that it was entitled to a new trial. Our conclusions regarding the arguments Dol-gencorp presents in favor of a JML preter-mit the need to discuss Dolgencorp’s arguments regarding its motion for a new trial.
A. Did Welch’s Dismissal from the Action Affect Spence’s Claims Based on the Doctrine of Respondeat Superior?
Dolgencorp first contends that, because Spence’s claims against Dolgencorp’s employee, Welch, were dismissed, Dolgen-corp was entitled to a JML as to all of Spence’s claims against Dolgencorp básed on the doctrine of respondeat superior. We disagree.
This Court has held:
“ ‘[W]hen [a] principal and his agent are sued in [a] joint action in tort for misfeasance or malfeasance on the part of the servant, and his liability for the conduct of said servant is under the rule of re-spondeat superior, a verdict in favor of the servant entitles the master to have the verdict against him set aside.’ ”
Larry Terry Contractors, Inc. v. Bogle, 404 So.2d 613, 614 (Ala.1981) (quoting Louisville & Nashville R.R. v. Maddox, 236 Ala. 594, 600, 183 So. 849, 853 (1938)). The difficulty with Dolgencorp’s argument is that, in this case, there was no adjudication of the merits of Spence’s claims against Dolgencorp’s employee, Welch. As noted, Spence herself moved to dismiss her claims against Welch because she had been unable to effect service on Welch.[5]
Dolgencorp concedes that it appears that'Spence’s claims against Welch-were dismissed without prejudice, see note 5, supra, but it contends that “the fact that Spence voluntarily dismissed Welch before trial,' and then- tried her claims -against Spence’s principal, Dolgencorp, to a verdict, operates as res judicata such that the dismissal of Welch necessarily was with prejudice.” Dolgencorp fails to explain, however, why'the fact that Spence tried her direct claims against one defendant to a conclusion somehow operates in “bootstrap” fashion to create a “res judicata” bar of her separate claims against another (much-less how any such alleged res -judi-cata bar of Spence’s claims against Welch could somehow, in circular fashion, then come back to undo the very adjudication of the claim against Dolgencorp that would be the basis of such a res judicata bar in the first place). Nothing in our rules of procedure requires, under penalty of a res judicata bar, that a plaintiff must try in the same action his or her claims against two different defendants arising out of the same transaction or occurrence.
Even if the claims against Welch had been expressly dismissed by the trial court “with prejudice” as, for example, a sanction for some procedural or discovery failure on Spence’s part (which they were not), there still would have been no adjudication of the factual merits of the nature required to undermine a claim against Welch’s employer based on the doctrine of respondeat superior. As Spence correctly notes, Welch obtained a judgment' “because of a legal principle related to the Alabama Rules of Civil Procedure. The effect ... is not an adjudication of the facts of Welch’s misconduct on behalf of Dolgencorp.”
Welch’s dismissal did not affect Spence’s ability to pursue her separate claims against Dolgencorp based on a theory of respondeat superior. Under the circumstances presented, if Spence could prove *180 negligence on the part of a Dolgencorp employee, then she would have a basis for recovery against Dolgencorp on a respon-deat superior theory. The trial court, therefore, did not err in declining to enter a JML in favor of Dolgencorp on the basis that it had previously dismissed Spence’s claims against Dolgencorp’s employee, Welch.
B, Spence’s Assault and Battery Claim
Dolgencorp contends that it cannot be held liable for Welch’s alleged assault and battery under the doctrine of respon-deat superior because there is no evidence indicating that Welch was acting within the line and scope of her employment when she allegedly grabbed Spence’s arm and shook it.
“The plaintiff in an action alleging assault and battery must prove ‘(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner.’ ” Harper v. Winston Cty., 892 So.2d 346, 353 (Ala.2004) (quoting Ex parte Atmore Cmty. Hosp., 719 So.2d 1190, 1193 (Ala.1998)).
“An employer is liable for the intentional torts of its employee if: (1) the employee’s acts are committed in furtherance of the business of the employer; (2) the employee’s acts are within the line and scope of his employment; or (3) the employer participated in, authorized, or ratified the tortious acts. Potts v. BE&K Constr. Co., 604 So.2d 398, 400 (Ala.1992). This Court has stated that tortious acts furthered an employer’s business where, for example, a defendant undertaker refused to release the body of the plaintiffs husband until the plaintiff had paid for services rendered, Levite Undertakers Co. v. Griggs, 495 So.2d 63 (Ala.1986), and where the defendant used threatening or abusive behavior in an attempt to coerce the plaintiff into dropping his claim, National Security Fire & Casualty Co. v. Bowen, 447 So.2d 133 (Ala. 1983). In contrast, where a co-employee defendant’s behavior is aimed at ‘satisfying [the co-employee’s] own lustful desires,’ this Court has held that ‘no corporate purpose could conceivably be served.’ Busby [v. Truswal Sys. Corp.], 551 So.2d [322,] 327 [ (Ala.1989) ]. ...
“An employee’s tortious acts occur within the scope of his employment if the acts are ‘so closely connected with what the servant is employed to do and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment.’ Prosser & Keeton, The Law of Torts 503 (5th ed. 1984). In Big B, Inc. v. Cottingham, 634 So.2d 999, 1002 (Ala. 1993), this Court held that there was sufficient evidence that a store manager who falsely imprisoned a customer suspected of shoplifting was acting within the scope of his employment because preventing shoplifting was closely related to his employment as a store manager. In contrast, where the store manager forced the customer to perform a sexual act with him, this Court has held that the manager was acting outside the scope of his employment. Id. at 1002; see also Hendley v. Springhill Mem’l Hosp., 575 So.2d 547 (Ala.1990) (holding that a hospital is not liable for the unauthorized sexual touching by an agent).”
Ex parte Atmore Cmty. Hosp., 719 So.2d at 1194.
Under Spence’s version of the incident, Welch’s method of confronting Spence about Spence’s alleged attempt to shoplift store merchandise may have been improper, but Welch clearly was carrying out an *181 objective of her employment, i.e., she was attempting to prevent loss of inventory from the store she managed. Moreover, Dolgencorp had made it clear to Welch in her 2012 performance evaluation and training reminders from district managers that excessive shoplifting from the store was unacceptable. Viewed in this light, Welch’s actions also furthered Dolgencorp’s business. Welch’s actions did not involve attempting to satisfy personal desires; she was attempting to carry out her duties as a store manager, albeit in a manner not condoned by Dolgencorp’s SOP. Therefore, there is evidence indicating that Welch was acting within the line and scope of her employment and that her actions furthered Dolgencorp’s business. Accordingly, Dol-gencorp could be held liable for Welch’s alleged assault and battery, and the trial court did not err in submitting that claim to the jury.
C. Spence’s Negligent-Training Claim
Dolgencorp contends that Spence failed to present substantial evidence in support of her negligent-training claim against Dolgencorp. Specifically, Dolgen-corp contends that Spence failed to present any evidence indicating that its SOP for shoplifting was inadequate in any way or that Dolgencorp failed to communicate effectively its shoplifting SOP to Welch. Although we'are inclined to agree with the former proposition, we cannot agree with the latter.
Spence did not contend at trial, and she does not assert on appeal, that Dolgen-corp’s shoplifting SOP was inadequate or improper. Instead, she argues that Dol-gencorp failed to communicate its SOP effectively to Welch. Although this Court expresses no opinion on the merits of this argument, we cannot say that the record is so devoid of evidence in support of it that the trial court erred to reversal in submitting Spence’s negligent-training claim to the jury. Welch testified that her training occurred during “Christmastime” when “it was very busy.” She explained her training as “do a little training ... stock a truck ... do whatever to help in the store because it [was] December. It was busy.” When questioned as to whether she had ever been “trained by Dolgencorp on the proper way to stop a shoplifter,” Welch answered: “I don’t remember—I don’t recall seeing this, no.”[6] The record indicates that Welch could not recall being trained as to other aspects of Dolgencorp’s shoplifting policy, including the requirement that the store manager write a detailed statement about the alleged shoplifting incident and that evidence relating to such an occurrence be sealed inside a Dolgen-corp bag and maintained pending criminal proceedings. Welch further testified that she was “following the number one rule of any retail business and that is to protect the assets of the store.” She testified that Dolgencorp never spoke with her about her interpretation of the policies and procedures for handling shoplifters. She further testified that it was her understanding that the shoplifting SOP provided “guidelines” for store managers that she could decide to follow or not.
Additional evidence supporting the submission of Spence’s negligent-training claim to the jury included evidence indicating that the store manager who succeeded Welch had been employed with Dolgen-corp for a period of more than two years but had never seen a copy of Dolgencorp’s *182 shoplifting SOP until a few hours before his deposition.
Again, this Court offers no comment on the ultimate, merits of the negligent-training claim. Dolgencorp argues. on appeal only that there was not sufficient evidence of negligent training in the first place to have submitted the claim to the jury. Because we cannot agree with this proposition, we decline to hold the .trial court in error for having done so.
D. Spence’s False-Imprisonment Claim
Dolgencorp contends that Spence failed to present substantial evidence in support of her claim of false imprisonment. Dolgencorp’s argument hinges on its contention that .Welch had probable cause to detain Spence after believing she witnessed Spence conceal store merchandise in her purse.
“False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty.” § 6-5-170, Ala. Code 1975. “A merchant, pursuant to § 15-10-14(a) and (c), [Ala. Code 1975,] is given the statutory right to detain a person if he has probable cause for suspecting that items from his store have been unlawfully taken.”[7] Whitlow v. Bruno’s, Inc., 567 So.2d 1235, 1238-39 (Ala.1990).
Probable 'cause has been defined as “ ‘[a] reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged.’ ” ’ ” Wesson v. Wal-Mart Stores E., L.P., 38 So.3d 746, 751 (Ala.Civ.App.2009) (quoting Eidson v. Olin Corp., 527 So.2d 1283, 1285 (Ala.1988), quoting in turn Parisian Co. v. Williams, 203 Ala. 378, 383, 83 So. 122, 127 (1919)). “Alabama law requires that ‘the existence of probable cause is to be judged in light of the facts as they appeared when the underlying action was filed.’ ” Gunter v. Pemco Aeroplex, Inc., 646 So.2d 1332, 1334 (Ala.1994) (quoting Fina Oil & Chem. Co. v. Hood, 621 So.2d 253, 257 (Ala.1993)). “ ‘ “The question [of probable cause] is not whether the [falsely imprisoned] plaintiff was guilty of the'thing charged, but whether the ... defendant acted in good faith on the appearance of things.” ’ ” Wesson, 38 So.3d at 751 (quoting Eidson, 527 So.2d at 1285).
- Dolgencorp argues that “the evidence clearly established that Welch had probable cause to suspect Spence' of shoplifting and to call the police and report the same.” Dolgencorp notes that Welch testified that she saw Spence place a container of mineral oil -into her open purse and thereafter drop a container of hair spray' into the purse and then zip the purse closed. Dol- *183 gencorp adds that Spence testified that the hair spray was not visible in her cart because it was underneath the purse.
The problem with DolgeneOrp’s argument is that what Welch did and did not see is in dispute. Typically, “probable cause is a jury question in false arrest cases.” Frison v. Delchamps Store No. 11, 507 So.2d 478, 480 (Ala.1987) (citing Bank of Cottonwood v. Hood, 227 Ala. 237, 241, 149 So. 676, 679 (1933)). “Tf the facts-on the issue of probable cause are not in dispute, whether such facts amount to probable cause is a question of-law for the courts.’ ” Eidson, 527 So.2d at 1285 (quoting Hanson v. Couch, 360 So.2d 942, 945 (Ala.1978) (emphasis added)).
The facts here are in dispute. Although Welch testified that she witnessed Spence place merchandise in her purse, Spence and Atchison testified that Spence placed the items in her cart, that the purse was too small to hold the merchandise, and that the zipper on the purse was broken and the purse could not be closed. If the testimony presented by Spence and Atchi-son was believed by a jury, and/or the jury found Welch’s testimony not credible, then there would be a basis for a finding that Welch lacked probable cause to- believe Spence was guilty of shoplifting. Because of the conflicting evidence, the trial court did not err in allowing Spence’s false-imprisonment claim to go to the jury.
E. Spence’s Malicious-Prosecution Claim
Dolgencorp contends that Spence failed to present substantial evidence to support her claim of malicious prosecution. Specifically, Dolgencorp argues that Welch had probable cause to sign the complaint charging Spence with theft of merchandise and that Welch lacked malicious intent in doing so.
“The plaintiff in a malicious prosecution case must prove each of the following elements: 1) that a prior judicial proceeding was instigated by the defendant 2) without probable cause and 3) with malice; 4) that that prior proceeding was terminated in the plaintiffs favor; and 5) that the plaintiff suffered damage[ ] as a result of that prior proceeding.”
Whitlow, 567 So.2d at 1237.
“'In determining probable cause for the initiation of civil proceedings, all that is necessary is that the claimant reasonably believe that there is a chance that his claim may be held valid upon adjudication.’
“[Boothby Realty Co. v. Haygood,] 269 Ala. [549] at 553, 114 So.2d [555] at 558 [(1959)]. ‘[T]he existence of probable cause is to be judged in light of the facts as they appeared when the underlying action was filed.’ Fina Oil & Chem. Co. v. Hood, 621 So.2d 253, 257 (Ala.1993). ‘ “The question is not whether the ... -plaintiff [claiming malicious prosecution] was guilty of the thing charged, but whether the ... defendant acted in good faith on the appearance of. things.” ’ Eidson v. Olin Corp., 527 So.2d 1283, 1285 (Ala.1988) (quoting Birwood Paper Co. v. Damsky, 285 Ala. 127, 134-35, 229 So.2d 514, 521 (1969))...
“ ‘Because malicious-prosecution actions are not favored in the law, at the trial of the malicious prosecution action [the plaintiff] would have a strict burden of proving á negative—i.e., the complete absence of ... probable cause for [the defendant] to' bring the [underlying] action. [The plaintiffs] failure to prove the absence of probable cause would result 'in a judgment in favor of [the' defendant] as a matter of law. For purposes of summary judgment, the converse of [the plaintiffs] burden of proof may be stated as follows: If there are any undisputed *184 facts of record establishing that [the defendant] had probable cause to bring the former action ... against [the plaintiff], then [the plaintiff] cannot recover for malicious prosecution and summary judgment is appropriate.
“ ‘ “If the facts on the issue of probable cause are not in dispute, whether such facts amount to probable cause is a question of law for the courts.” Hanson v. Couch, [360 So.2d 942], 945 [ (Ala.1978) ]; Gulf States Paper Corp. v. Hawkins, 444 So.2d 381 (Ala.1983).
“‘The test that this Court must apply when reviewing the lack-of-probable-cause element in a malicious prosecution case in which summary judgment has been granted to a defendant is as follows: Can one or more undisputed facts be found in the record below establishing that the defendant acted in good faith on the appearance of things as they existed when the suit was filed, based upon direct evidence, or upon circumstantial evidence and inferences that can reasonably be drawn therefrom? If so, then summary judgment in favor of the defendant on the plaintiffs malicious prosecution count would be appropriate.’
“Eidson, 527 So.2d at 1285-86 ....
“ ‘Malice in a malicious prosecution action has been defined as whatever is done willfully and purposely, whether the motive is to [injure the] accused, to gain some advantage to the prosecutor, or through mere wantonness or carelessness, if at the same time wrong and unlawful within the knowledge of the actor.
“ ‘Malice may be inferred from the want of probable cause, or from defendant’s conduct, where such conduct will admit of no other reasonable construction.’ ”
Willis v. Parker, 814 So.2d 857, 863-64 (Ala.2001) (quoting Dillon v. Nix, 55 Ala. App. 611, 613-14, 318 So.2d 308, 310 (Ala. Civ.App.1975) (some emphasis omitted and some emphasis added)).
Dolgencorp emphasizes that, in an action alleging malicious prosecution, probable cause is to be assessed from the subjective view of the defendant. See, e.g., Wal-Mart Stores, Inc. v. Goodman, 789 So.2d 166, 174 (Ala.2000) (stating that, “[i]n malicious prosecution eases, ‘probable cause’ is defined as ‘such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty1 ” (quoting Delchamps, Inc. v. Morgan, 601 So.2d 442, 445 (Ala.1992)). Dol-gencorp argues that, from her viewpoint, Welch had reason to believe that Spence was attempting to steal merchandise because Spence concealed the merchandise in her purse. Dolgencorp in particular argues that this Court’s reasoning in Morgan supports its position on probable cause as it relates to the malicious-prosecution claim.
In Morgan, Lela Morgan sued Del-champs, Inc. (“Delchamps”), and a Del-champs employee, Larry Mims, alleging malicious prosecution, false imprisonment, and assault and battery stemming from an incident in which Mims accused Morgan of attempting to steal a package of cigarettes from a Delchamps grocery store. Regarding probable cause, the Court explained:
“The question ... is not whether Morgan was in fact guilty of the charge of shoplifting, but whether Mims in fact saw events that would lead him to believe that she was guilty. S.S. Kresge Co. [v. Ruby], 348 So.2d [484] at 488 [ (Ala.1977) ]. Mims testified that on the day Morgan was arrested for shoplifting, *185 he saw her enter the store, pick up a package of cigarettes from the cigarette carousel, and walk toward the rear of the store. He testified that he had noticed that this was a pattern for shoplifters. He further testified that he then followed Morgan and that when he was in a position where he was facing her he saw her place the cigarettes in the pocket of her pants and that he had no doubt at that time that she had placed the cigarettes in her pocket. (R. 127.) It is undisputed that Morgan had a pack of Winston cigarettes in her pants pocket, which was visible through the fabric of her pants, while she was in the store. She maintained that all Mims saw was a partial pack of cigarettes; Mims maintains that it was ‘a complete package,’ a ‘perfectly square box package.’ (R. 128.) Because the question before the court was one of probable cause and was therefore dependent on Mims’s subjective belief, even if Mims’s belief that Morgan had a complete pack of cigarettes in her pocket was subsequently shown to be incorrect, the question should not have been submitted to the jury. The fact that Morgan was acquitted of the charge does not prove that Delchamps lacked probable cause to arrest her. Piggly Wiggly Alabama Co. v. Rickles, 212 Ala. 585, 103 So. 860 (1925).

((

“Because Morgan undisputedly had a visible pack of cigarettes in her pocket, Mims could have entertained ‘an honest and strong suspicion’ that she had concealed store property. Therefore, the malicious prosecution count should not have been submitted to the jury.”
Morgan, 601 So.2d at 445 (emphasis added).
Dolgencorp argues that, just as it did not matter in Morgan for purposes of evaluating probable cause that Mims might have been mistaken that Morgan had stolen a package of cigarettes, in this case the fact that Welch may have been mistaken as to whether Spence actually was attempting to steal the mineral oil and hair spray is not the issue. The issue is whether Welch’s subjective belief that Spence was attempting to steal the items of merchandise was reasonable under the circumstances. Dolgencorp contends that it was.
The difficulty with the comparison to Morgan, however, is that it was undisputed that Morgan had a package of cigarettes in her pocket. It is not undisputed in this case that Spence had the mineral oil and the hair spray in her purse. The Morgan Court is clear, as was the Court in Willis and the cases cited therein, that the element of probable cause in a malicious-prosecution claim is only a matter for determination by the court if the facts in consequence are undisputed. That simply is not the case here.
The element of malice is another matter. Dolgencorp notes that it is undisputed that Welch and Spence did not know each other before their encounter. Spence introduced no evidence indicating that Welch acted out of ill will or a desire for revenge or that she was trying to gain some kind of advantage over Spence. The evidence simply indicated that Welch believed Spence was attempting to steal merchandise from the store, and that is the reason she signed the complaint against Spence.
Spence essentially concedes that she did not introduce any evidence of personal ill will or a desire for revenge on Welch’s part, but she argues that she did not have to. She cites Delchamps, Inc. v. Larry, 613 So.2d 1235, 1239 (Ala.1992), for the proposition that “[m]alice is an inference of fact and may be inferred from the lack of probable cause or from mere wantonness *186 or carelessness.” Spence contends that Welch was careless and that she should have made further inquiry before prosecuting Spence because Spence had told Welch she planned to pay for everything, she had showed Welch the two items of merchandise, she had said she was not-done shopping, and Welch did not follow the Dolgencorp shoplifting SOP by offering' Spence the opportunity to pay for the items.
Spence’s position is equivalent to arguing that Welch’s failure to follow Dolgen-corp’s SOP amounted to malice. This Court clarified in cases subsequent to Larry, however, that carelessness is evidence of malice only “ ‘if at the same time' [the act is] wrong and unlawful within the knowledge of the actor.’ ” Willis, 814 So.2d at 863-64 (quoting Dillon v. Nix, 55 Ala.App. 611, 613-14, 318 So.2d 308, 310 (Ala.Civ.App.1975) (emphasis omitted)). See also Goodman, 789 So.2d at 174 (stating that “[m]alice is an inference of fact, and it may be inferred from a lack of probable cause or from mere wantonness or carelessness if 'the actor, when doing the act, knows it to be wrong or unlawful” (emphasis added)). And as this Court held in Willis: “ ‘[M]alice may be inferred from the want of probable cause, or from defendant’s conduct, where such conduct will admit of no other reasonable construction.’” 814 So.2d at 864. Based on the record presented, we cannot conclude that Spence presented evidence sufficient to support a finding of malice on Welch’s part. We conclude, therefore, that the trial court erred in submitting Spence’s malicious-prosecution claim to the jury.
F. Spence’s Defamation Claim
Dolgencorp contends that Spence failed to present- substantial evi- • dence to support her defamation claim. Specifically, Dolgencorp states that Spence’s defamation claim is based on Welch’s report to the police of the suspected theft. Dolgencorp argues that Welch was entitled to a qualified privilege under § 13A-11-161, Ala. Code 1975, for reporting the suspected theft. Under this privilege, Spence had to present evidence of “actual malice” on- Welch’s part to sustain the defamation claim. Dolgencorp contends that there is no evidence of “actual malice.”
“ ‘The elements of a cause of action for defamation are: 1) a false and defamatory statement -concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault, amounting at least to negligence on the. part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by-the publication of the statement.’ ”
Wal-Mart Stores, Inc. v. Smitherman, 872 So.2d 833, 840 (Ala.2003) (quoting McCaig v. Talladega Publ’g Co., 544 So.2d 875, 877 (Ala.1989)), Section 13A-11-161 provides, in pertinent part: “The publication of a fair and impartial report ... of any charge of crime made to any judicial officer or body .., shall be privileged, unless it be proved that the same was published with actual malice.” This Court has explained:
“Actual malice as used in this statute refers to the common law standard.of malice rather than the constitutional standard of malice as set out in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In Alabama, where a communication concerning'a-private person is protected by a qualified or conditional privilege,[8] such a person cannot recover in a defa *187 mation action unless that person can show that the communication was made with actual or common law malice (shown by evidence of previous ill will, hostility, threats, other actions, former libels or slanders, and the like, emanating from the defendant, or by the violence of the defendant’s language, the mode and extent of the publication, and the like).”
Wilson v. Birmingham Post Co., 482 So.2d 1209, 1213 (Ala.1986).
“Ordinarily, ‘[t]he determination of whether a statement is privileged is a question of law for the trial judge.’" Wiggins v. Mallard, 905 So.2d 776, 783 (Ala. 2004) (quoting Atkins Ford Sales, Inc. v. Royster, 560 So.2d 197, 200 (Ala.1990)). The Court has also observed, however, that “the détermination of malice in defamation cases is particularly within the province of the jury.” Cousins v. T.G. & Y. Stores Co., 514 So.2d 904, 906 (Ala.1987).
Spence appears to concede that the qualified privilege applies in this case, and indeed this Court previously has applied it to situations in which store employees have reported suspected shoplifters to law-enforcement authorities. See, e.g., Cousins, supra; Tidwell v. Winn-Dixie, Inc., 502 So.2d 747 (Ala.1987). Spence argues, however, that' she did introduce evidence of actual malice.
Spence notes that Welch did not watch video surveillance of the incident and did not allow Spence to pay for the items as Dolgencorp’s shoplifting SOP instructs. In her argument regarding her malicious-prosecution claim, Spence suggested that those decisions by Welch were careless. Now she suggests that they demonstrate that Welch knew that her shoplifting accusation was false. Spence speculates that the reason Welch persisted in her accusation despite knowing it was false was that “ill will and hostility were actually at work.” Importantly, however, Spence provides no basis for .the existence of such ill will.
Conversely, there is ample evidence indicating that the reason Welch did not “investigate further” is that she believed she had witnessed Spence’s attempt to steal the merchandise. Welch repeatedly stated as much in her testimony, Welch testified: “When she. got to the aisle with the hair spray, I was standing at the end of the aisle. As she was putting it in her purse and zipping it, I was right over, her shoulder looking. I saw her put it in her purse and zip her purse.” Again, Welch testified: “I saw the items go in her purse and the purse be. [sic] zipped.” Yet again, when Spence’s counsel asked Welch how she knew that the items were in Spence’s purse,, she testified: “Because I saw her put them in and zip the purse.” . .
The record does not contain substantial evidence of actual malice on Welch’s part. Therefore, the trial court erred in submitting Spence’s defamation claim to the jury.
G. Good Count/Bad Count
“In the present case, the jury returned a general verdict, without indicating which of the various elaims it based its verdict upon. This Court cannot’ presume that the verdict was based solely upon the ‘good’ counts, i.e’., the claims that are supported by the evidence. The jury could have based its verdict, awarding compensatory and punitive damages, solely upon the ‘bad’ counts, i.e., the claims that are not sup *188 ported by the evidence. For this reason, we have no alternative but to order a new trial.”
Cook’s Pest Control, Inc. v. Rebar, 28 So.3d 716, 729 (Ala.2009).
As in Rebar, the jury in this case returned a general verdict without indicating which of Spence’s various claims it was returning the verdict upon. We have determined that the malicious-prosecution and defamation claims were improperly submitted to the jury. Therefore, we have in this appeal a “good-couni/bad-count” situation. Dolgencorp submitted a motion for a JML specifically directed to the various claims; that motion was denied. We cannot assume that the verdict was based only on those of Spence’s claims that were properly submitted to the jury. Accordingly, the judgment based on the jury verdict for Spence must be reversed; we remand this case for a new trial on Spence’s claims that were properly submitted to the jury, i.e., negligent training, invasion of privacy, false imprisonment, and assault and battery. See e.g., Rebar, supra; Alfa Life Ins. Corp. v. Jackson, 906 So.2d 143, 146 (Ala. 2005); and Waddell & Reed, Inc. v. United Inv’rs Life Ins. Co., 875 So.2d 1143, 1165-66 (Ala.2003).
III. Conclusion
We reverse the judgment for Spence and remand the case to the trial court for the entry of a JML in favor of Dolgencorp on Spence’s claims of malicious prosecution and defamation and for a new trial on Spence’s remaining claims of negligent training, invasion of privacy, false imprisonment, and assault and battery.
REVERSED AND REMANDED.
Stuart, Bolin, Main, and Bryan, JJ., concur.

. Cindy Welch, the store manager, testified that she did not recall anyone being with Spence, but both Spence and Atchison testified that Atchison was with Spence.

. No video of the incident was submitted at trial.

. The term “shrink results” refers to loss of inventory as a result of shoplifting.

. Spence’s wanton-training claim was not submitted to the jury,

. The dismissal appears to have been without prejudice. Rule 41(a)(2), Ala. R. Civ. P., expressly states that, “[u]nless otherwise specified in the order, a dismissal under this paragraph is without prejudice,”

. The reference to not having seen “this” apparently is a reference to Dolgencorp’s written policies. Welch testified that she provided an electronic signature in connection with the video training provided by Dolgencorp; she testified that she never saw the actual policies and procedures in print.

. Sections 15—10—14(a) and (c), Ala. Code 1975, provide:
“(a) A peace officer, a merchant or a merchant’s employee who has probable cause for believing that goods held for sale by the merchant have been unlawfully taken by a person and that he can recover them by taking the person into custody may, for the purpose of attempting to effect such recovery, take the person into custody and detain him in a reasonable manner for a reasonable length of time. Such taking into custody and detention by a peace officer, merchant or merchant's employee shall not render such police officer, merchant, or merchant’s employee criminally or civilly liable for false arrest, false imprisonment or unlawful detention.
[[Image here]]
;‘‘(c) A merchant or a merchant’s employee who causes such arrest as provided for in subsection (a) of this section of a person for larceny of goods held for sale shall not be criminally or civilly liable for false arrest or false imprisonment where the merchant or merchant’s employee has probable cause for believing that the perspn arrested committed larceny of goods held for sale.”

. In Ex parte Blue Cross & Blue Shield of Alabama, 773 So.2d 475, 477-78 (Ala.2000), *187 this Court stated that it would
“henceforth use the term qualified privilege, because, as we discuss and hold, the defense is not subject to any condition but is. simply subject to the qualification, or limitation, that it suffices against only claims for innocent or mistaken defamation and not against claims for defamation committed with actual malice.”