[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10182
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cv-00865-KOB

TARGET MEDIA PARTNERS,

Plaintiff,

ED LEADER,

Plaintiff - Appellant,

versus

SPECIALTY MARKETING CORPORATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(October 5, 2020)

Before BRANCH, GRANT and MARCUS, Circuit Judges.

PER CURIAM:

Ed Leader appeals from the district court's order granting summary judgment in favor of Specialty Marketing Corporation on Leader's defamation claim, the only claim remaining in his complaint. On appeal, Leader argues that: (1) the district court erred in concluding that a statement Specialty Marketing made about Leader was libelous per se; and (2) the district court erred in deciding the truthfulness of the statement instead of sending the question to a jury. After careful review, we affirm.

The undisputed facts are these. Target Media Partners owns several companies that publish and distribute free magazines and newspapers for the trucking industry. In the early- to mid-2000s, Leader was head of Target Media's trucking division and was responsible for soliciting advertisements for placement in the company's publications. Organizations that hire truck drivers buy most of the advertisements in Target Media's publications. Specialty Marketing publishes for the Southeastern United States its own free magazine called Truck Market News.

In 2002, Target Media contractually agreed to distribute and display Specialty Marketing's Truck Market News each month at truck stops, rest stops, and similar locations frequented by truck drivers. In 2007, after discovering that Target Media was apparently discarding Truck Market News copies instead of distributing and displaying them, Specialty Marketing sued in Alabama state court, alleging breach of contract and fraud. In 2010, the trial court found Target Media and Leader liable for $2.36 million in damages. After a lengthy appeals process, the Alabama

2

Supreme Court upheld Specialty Marketing's damages award. Target Media Partners Operating Co., L.L.C. v. Specialty Marketing Corp., 177 So. 3d 843 (Ala. 2014).  More than four years later, in 2018, Specialty Marketing was still owed $671,200, plus interest, in unsatisfied damages.

In March of 2014, during the appeals process, Specialty Marketing mailed packages to at least two of Target Media's advertising clients. Included in each package was a cover letter.  The last paragraph of each letter, composed by Specialty Marketing's president, said:

> It is my belief that you and everyone else that has any business or personal dealings with Target Media Partners, their owners and officers, need to know of this documented, trail [sic] proven fraud by them. All of which has been upheld by the Alabama Supreme Court. Further, it is my belief that many others have been and continue to be, victims of this fraud.

Based on this statement, Target Media and Leader (hereinafter, "Leader")[1] filed a defamation suit against Specialty Marketing in May 2014.  After Leader's successful appeal of the district court's dismissal of the lawsuit on Rooker-Feldman[2] grounds, see Target Media Partners v. Specialty Mktg. Corp., 881 F.3d 1279 (11th Cir. 2018), the case returned to the district court, and Specialty Marketing moved for summary judgment on the only remaining claim, defamation.  The district court granted

---

[1] Target Media Partners was originally a party, but was dismissed from the suit in February 2019.

[2] Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

Specialty Marketing's motion for summary judgment, concluding that Leader had failed to show a genuine dispute of material fact about whether Specialty Marketing's statement was true.  This timely appeal follows.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion.  Looney v. Moore, 886 F.3d 1058, 1062 (11th Cir. 2018).  Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To determine whether a factual dispute is genuine, we must consider whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016) (quotations omitted).

A successful claim for defamation in Alabama requires four elements: "1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement."  Dolgencorp, LLC v. Spence, 224 So. 3d 173, 186 (Ala. 2016) (quotations omitted).  Under the first prong of the test -- whether a statement is false and defamatory -- "[i]t is well established in Alabama that [even if a statement is facially defamatory], truth is a complete and absolute defense."

4

Battles v. Ford Motor Credit Co., 597 So. 2d 688, 692 (Ala. 1992) (affirming summary judgment ruling concluding that there was no factual dispute that the statement was true); see also Sanders v. Smitherman, 776 So. 2d 68, 72 (Ala. 2000) (affirming summary judgment ruling and holding that "truth is a complete bar to a defamation action").

Moreover, contrary to Leader's suggestion, the normal rules of summary judgment apply to questions about the truth of a statement in a defamation action. This means that "once [a defendant] submit[s] substantial evidence indicating [its] statements were true, the burden shift[s] to the [plaintiff] to present substantial evidence indicating that the statements made about them were false." Sanders, 776 So. 2d at 72; McCaig v. Talladega Pub. Co., 544 So. 2d 875, 878 (Ala. 1989) (holding that "[w]ith respect to the element of falsity [in a defamation action]," the issue only goes to the jury "if the plaintiffs survive the summary judgment motion"). Further, in construing a statement for purposes of summary judgment, a statement does not meet the falsity element of a defamation action where "[t]he undisputed testimony of the parties indicates that facts set out in the article are in their most literal sense true." McCaig, 544 So. 2d at 878-79; see also S.B. v. Saint James Sch., 959 So. 2d 72, 100 (Ala. 2006).

Leader argues that Special Marketing made a defamatory statement to Target Media's advertising clients when it wrote a letter to them describing that a trial had

proven Target Media's "documented" fraud, which was "upheld by the Alabama Supreme Court," and that Specialty Marketing's president believed "that many others have been and continue to be, victims of this fraud." Leader says that this statement is false for purposes of its defamation claim because it "accuses Target Media Partners and its 'owners and officers' of continuing to defraud its customers." But, as we've explained, "truth is a complete bar to a defamation action," Sanders, 776 So. 2d at 72, and on the summary judgment record before us, we can find no genuine dispute of material fact about whether the statement by Specialty Marketing's president is true.

Indeed, reading the statement in its "most literal sense," McCaig, 544 So. 2d at 878-79, we construe Specialty Marketing's president to have been saying that Target Media committed fraud, which was proven in the Alabama courts, and that many entities -- including advertising agencies -- were affected by that fraud and may still be affected by that fraud. As the district court concluded, the challenged statement does not impute any ongoing behavior to Target Media -- to continue to be a victim of "this [documented] fraud" is a different thing from accusing Target Media of continuing to defraud. That the statement uses the phrase "this fraud" confirms that Specialty Marketing's president was referring to the fraud proven in the Alabama courts.

6

Moreover, the statement makes the unsurprising claim that some entities were and are victims of Target Media's adjudicated fraud. These victims necessarily include not only Specialty Marketing, but every entity that purchased advertisements in the Specialty Marketing magazines the Alabama courts found Target Media to have thrown away. See Target Media Partners Operating Co., 177 So. 3d at 848 (describing the types of companies that purchase advertising space in Specialty Marketing's magazines). Notably, Leader specifies that the companies to which Special Marketing sent its letter were advertising agencies, not publishers or distributors of Specialty Marketing magazines. These agencies, or agencies like them, very well could have advertised in the discarded Specialty Marketing magazines, and, therefore, may have suffered lingering consequences (lost revenue, lost job placements, etc.) from the lost advertisements, causing them to continue to be victims of that proven fraud. What's more, seven plus years later, Target Media still owed Specialty Marketing hundreds of thousands of dollars in damages, further indicating that some entities "continued to be victims" within the only reasonable understanding of the phrase.

In short, Leader does not put forth any evidence to plausibly suggest another reasonable interpretation that the district court should have made. Accordingly, the district court did not err in concluding that Leader failed to establish a genuine

dispute of material fact concerning the truth of Specialty Marketing's statement, and we affirm its grant of summary judgment.[3]

**AFFIRMED.**

---

[3] To the extent Leader argues that because he suffered defamation <u>per se</u> (the fourth element), he did not need to show damages, his argument is irrelevant. A writing published to another is defamation <u>per se</u> "if the language used exposes the plaintiff to public ridicule or contempt, though it does not embody an accusation of crime, the law presumes damage to the reputation, and pronounces it actionable <u>per se</u>." <u>Marion v. Davis</u>, 114 So. 357, 359 (Ala. 1927). However, because we conclude that Leader did not satisfy the first element of a defamation claim, we need not reach this issue.